**Ex parte Ricky Eugene
KERR, Applicant.**

**No. 35,065-04.**

Court of Criminal Appeals of Texas.

Jan. 2, 2002.

Raoul D. Schonemann, Austin, for Appellant.

Edward Shaughnessy, Asst. DA, San Antonio, Matthew Paul, State's Atty., Austin, for State.

### ORDER

COCHRAN, J., delivered the order of the Court, joined by MEYERS, PRICE, WOMACK, and HOLCOMB, JJ.

In this "subsequent" application for a writ of habeas corpus in a death penalty case, Mr. Kerr contends that his current writ is not procedurally barred by Section 5 of article 11.071,[1] which generally prohibits the consideration of subsequent writs. He argues that his application for writ of habeas corpus filed on August 6, 2000, should be considered on its merits for either of two reasons: 1) his original filing was not a true writ that attacked his conviction or sentence; or 2) his original habeas attorney did not provide effective assistance of counsel and thus he is entitled to a second go-around. We reject the second rationale, but we agree with the first. We conclude that applicant's original filing was not an application for a writ of habeas corpus as defined under article 11.071, and therefore his application of August 6, 2000 is his initial writ. We consider it timely filed as of today's date.

I.

On November 16, 1995, a jury found applicant guilty of capital murder for the double murders of Elizabeth McDaniel and her son Gary Barbier. The jury then answered the statutorily mandated special punishment issues in a manner which required the trial court to assess a sentence of death. Direct appeal to this Court was automatic. On June 18, 1997, this Court affirmed applicant's conviction and death sentence in an unpublished opinion. *State v. Kerr*, No. 72,261 (Tex.Crim.App. June 18, 1997).

Meanwhile, this Court had appointed applicant an attorney to represent him for purposes of filing a habeas corpus writ pursuant to article 11.071. On July 22, 1997, that original habeas counsel filed a document with the convicting court entitled "Application for Post–Conviction Writ of Habeas Corpus Brought Pursuant to Article 11.071 of the Texas Code of Crimi-

---

1. Tex.Code Crim. Proc. Art. 11.071 (Vernon Supp.2001). All future references to an "arti-
cle" refer to the Code of Criminal Procedure unless otherwise noted.

nal Procedure." However, that document was not, in fact, a true application for a writ of habeas corpus under article 11.071 because it did not attack applicant's capital murder conviction or death sentence. It raised no constitutional or jurisdictional claims concerning the fundamental fairness of the underlying trial or the accuracy of the verdict. Instead, this document attacked the constitutionality of the habeas corpus statutory scheme itself as embodied in article 11.071. But that type of derivative claim does not entitle a death row inmate to any "relief from a judgment imposing a penalty of death."[2] The convicting trial court noted this fact in her August 12, 1997, Findings of Fact and Conclusions of Law concerning applicant's original filing:

> The petitioner has not raised any issues, which if resolved in his favor, would entitle him to a new trial, or a new sentencing hearing. The petitioner has not brought forth any claims attacking the legality of his conviction or sentence.
>
> . . .
>
> Petitioner's sole claim for relief makes no claim, express or implied, which falls within the parameters of the types of error [which] can form the basis for post-conviction relief. He has not demonstrated the need for an evidentiary hearing, on the contrary, the petitioner seeks a finding from this Court that no contested factual issues exist.[3] The Court will comply with this request.

Quite understandably, the trial court recommended that "this application for habeas corpus relief be denied in all respects." This Court, in a per curiam order, agreed with that recommendation and duly denied relief because none was actually sought. Applicant had not claimed, much less shown himself entitled to, any relief from his underlying conviction or sentence. *Ex parte Ricky Eugene Kerr*, No. 35,065–01 (Tex.Crim.App. delivered September 24, 1997) (unpublished) (Meyers & Price, J.J., not participating). Judge Baird wrote a short dissent[4] to this Court's denial because applicant had personally written a letter to the clerk of this Court on August 20, 1997, complaining that he was entitled to habeas counsel who would "investigate any factual and legal grounds which would possibly supported [sic] relief from conviction and death sentence." Applicant immediately recognized the grave dilemma that the filing of the original "writ" document posed:

> [Habeas counsel] has filed only one claim for relief, essentially challenging the unitary review process of Art. 11.071 Code Crim. Proc. Ann. (Vernon Supp. 1997). I don't know whether this is a debatable issue, but I do know under all the "new habeas laws" prevent repeated writs and it is very important that counsel be as thorough as possible.
>
> I am sure if [habeas counsel] would have at least research the records and investigated the facts (which he is require[d] to do) he could have presented a complete post conviction writ of habeas corpus, now I am face[d] with the possibility of loosing [sic] all state and federal constitutional claims.

Applicant may not be a legal scholar, but even he could recognize that the document his original habeas counsel filed on his

---

2. Tex.Code Crim. Proc. Art. 11.071, § 1.

3. It is clear from the context of his motion that applicant's counsel sought this finding because it was his stance that there were no contested factual issues relevant to his due process claim attacking the habeas statute on its face.

4. Judge Overstreet dissented to the Court's denial but without written opinion.

behalf was not an application for a writ of habeas corpus attacking his capital murder conviction or death sentence.

After this Court denied habeas relief, the trial court set an execution date for February 25, 1998. Shortly before that appointed day, applicant filed a "Motion for Stay of Execution, Application for Writ of Habeas Corpus Pursuant to Art. V, Sec. 5 of the Texas Constitution or, in the Alternative, Motion to Vacate Prior Judgment and for Appointment of Competent Counsel Pursuant to Tex.Code Crim. Proc. Art. 11.071."[5] This Court dismissed that motion in a short per curiam order on February 23, 1998.[6] Judge Overstreet dissented, arguing that applicant had not received effective assistance of counsel on his first "writ." He noted that:

> The initial habeas attorney has even signed an affidavit admitting that he filed such a perfunctory habeas application because he erroneously thought he was precluded from challenging the conviction/sentence trial proceedings while the direct appeal was pending; i.e. because the direct appeal had not been decided before the deadline for filing the writ application, he thought "that no issues could be raised attacking the validity of conviction or sentence." Thus applicant has been *very* effectively denied his right to challenge his conviction via Texas state habeas application because of his attorney's error.

. . .

... It appears that this Court, in approving such a charade, is punishing applicant, rewarding the State, and perhaps even encouraging other attorneys to file perfunctory "non-applications." Such a non-application certainly makes it easier on everyone—no need for the attorney, the State, or this Court to consider any potential challenges to anything that happened at trial. Nevertheless, the Legislature has provided convicted capital defendants with the right to make such challenges by habeas corpus application.

On the same day that this Court dismissed applicant's motion for stay of execution, applicant filed—again, via current habeas counsel—for a stay in federal district court which was granted. The federal court then appointed current habeas counsel as federal writ counsel and granted several filing extensions to permit counsel sufficient time to investigate and raise appropriate habeas claims. On February 24, 1999, the federal district court dismissed, without prejudice, applicant's federal writ of habeas corpus, stating that "the courts of the State of Texas should be given an opportunity to address each of petitioner's numerous unexhausted claims for federal habeas corpus relief, as well as the cornucopia of new evidence supporting same that petitioner proposes to present to this Court."[7]

On March 1, 2000, applicant filed the instant third "writ" application with the convicting court which was transmitted to

---

5. At this time, applicant was represented by his current habeas counsel. Once again, nothing in this second habeas petition challenged the validity of applicant's underlying conviction or sentence. This second "writ" application again raised derivative claims, this time the contention was that applicant's original habeas counsel had provided ineffective assistance of counsel in filing the first "writ."

6. Judges Baird, Overstreet and Womack would have granted a stay of execution.

7. *Kerr v. Johnson,* No. SA–98–CA–151–OG (W.D. Tex. Dated Feb. 24, 1999) (unpublished).

this Court under art. 11.071, § 5 to determine whether this is a subsequent writ barred by Section 5. We conclude that this is *not* a subsequent writ. It is, in fact, the first writ application that Mr. Kerr has filed which comports with the requirements of article 11.071 in that it "seeks relief from a judgment imposing a penalty of death."[8]

## II.

The Habeas Corpus Reform Act of 1995 was enacted to implement more efficiently the Texas Constitutional mandate that "[t]he Legislature shall enact laws to render the remedy [of habeas corpus] speedy and effectual."[9] As Senator Montford explained in laying out the bill to the Senate Criminal Justice Committee,[10] the Habeas Corpus Reform Act made three major changes to Texas law: 1) it adopts a unitary system for death penalty habeas review in which direct appeals and habeas review proceeded along parallel paths at roughly the same time; 2) "it adopts the abuse of the writ doctrine currently used in federal court[11] which limits an inmate to a one-time application for a writ of habeas corpus except, and I want to emphasize, *except* in exceptional circumstances"; and 3) it provides for the appointment and payment of counsel to represent all those convicted of capital murder and sentenced to death in their habeas petitions.[12] Representative Pete Gallego, in presenting the same habeas bill to the Texas House of Representatives stated:

> And we tell individuals that everything you can possibly raise the first time, we expect you to raise it initially, one bite of the apple, one shot. . . . What we're attempting to do here is to say "raise everything at one time." You get one bite of the apple. If you have to stick the kitchen sink in there, put it all in there, and we will go through those claims one at a time and make a decision. But none of this "every week you file a new petition" which is currently basically what happens. . . . The idea is this: you're going to be able to fund counsel in these instances and we are going to give you one very well-repre-

8. Tex.Code Crim. Proc. Art. 11.071, § 1.

9. Tex. Const. Art. 1, § 12.

10. S.B. 440, Acts 1995, 74th Leg., codified at Tex.Code Crim. Proc. Art. 11.071 (testimony taken before the Senate Criminal Justice Committee, April 10, 1995).

11. Actually, this Court had long ago recognized the jurisprudential problems attendant to multiple writ filings and hinted of judicial invocation of the "abuse of the writ" doctrine:

> A proper respect for the concept of justice it is the office of the Great Writ to protect, requires that petitions be filed in earnest and that all contentions of merit be presented and ruled upon as expeditiously as possible. The writ of habeas corpus is too serious and important a matter to be lightly used, and easily abused. It is a shield against injustice which should not be suffered to become a weapon in the hands of spiteful persons.

*Ex parte Carr,* 511 S.W.2d 523, 525 (Tex.Crim. App.1974) (if habeas petitioner has grounds which would justify granting relief, he should present them with dispatch for determination, rather than doling them out one-by-one in repeated attempts to have both the benefits of relief and the fleeting pleasures of harassing those who confine him); *see also Ex parte Dora,* 548 S.W.2d 392, 393 (Tex.Crim.App. 1977) (habeas applicant cited for abuse of the writ for bringing same claims "over and over again"). This Court was not, however, consistent in its application of the "abuse of the writ" doctrine until passage of the 1995 Habeas Corpus Reform Act. Articles 11.07 and 11.071 now statutorily require the consistent application of the "abuse of the writ" doctrine to subsequent writ filings.

12. S.B. 440, Acts 1995, 74th Leg., codified at Tex.Code Crim. Proc. Art. 11.071 (testimony taken before the Senate Criminal Justice Committee, April 10, 1995).

sented run at a habeas corpus proceeding. And unless you meet a very fine-tuned exception, you're not going to be able to come back time after time after time.[13]

Of course, this entire statute is built upon the premise that a death row inmate *does* have one full and fair opportunity to present his constitutional or jurisdictional claims in accordance with the procedures of the statute.

Ricky Lee Kerr has not yet had that one full and fair opportunity. The present application is the first document in which applicant's claims and contentions, if true, might merit "relief from a judgment imposing a penalty of death." Art. 11.071, § 1.

■ The purpose of a writ of habeas corpus is to obtain a speedy and effective adjudication of a person's right to liberation from illegal restraint. *See Blackledge v. Allison,* 431 U.S. 63, 71, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) ("the very purpose of the writ of habeas corpus [is] to safeguard a person's freedom from detention in violation of constitutional guarantees"); *Ex parte Ramzy,* 424 S.W.2d 220, 223 (Tex.1968) ("the purpose of the writ of habeas corpus is to obtain a speedy adjudi-cation of a person's right to liberation from illegal restraint"); 39 Am Jur 2d, Habeas Corpus § 1 ("[t]he purpose of the writ of habeas corpus . . . is not to determine the guilt or innocence of a prisoner; the primary, if not the only, object of the writ is to determine the legality of the restraint under which a person is held").

■ To constitute a document worthy of the title "writ application" filed pursuant to article 11.071, the writ must seek "relief from a judgment imposing a penalty of death." [14] A death penalty "writ" that does *not* challenge the validity of the underlying judgment and which, even if meritorious, would not result in immediate relief from his capital murder conviction or death sentence, is not an "initial application" for purposes of art. 11.071, § 5 which generally bars consideration of a subsequent writ after filing the "initial application." This same rule applies to non-capital writs filed under Article 11.07. *See Ex parte Evans,* 964 S.W.2d 643, 646–47 (Tex. Crim.App.1998) (an "initial application" for a writ under art. 11.07 pertaining to a parole revocation hearing does not challenge the underlying conviction and thus does not bar a subsequent writ which does challenge the conviction).[15]

13. S.B. 440, Acts 1005, 74th Leg., codified at Tex.Code Crim. Proc. Art. 11.071 (Presentation by Representative Pete Gallego at second reading of S.B. 440 on the floor of the House of Representatives, May 18, 1995).

14. Tex.Code Crim. Proc. Art. 11.071, § 1.

15. The dissent argues that the reasoning and result in this case "effectively disavows a number of cases, new and old, dealing with an applicant's ability to raise claims under Article 11.07, including *Evans, Whiteside, Woodward,* and *McPherson.*" Dissenting Opinion at 424. With all due respect, we disagree. This case precisely follows the reasoning and result in *Evans.* There, as here, the applicant's first writ filing did not attack the conviction or sentence (in *Evans,* the first filing complained of a parole revocation process). Therefore, in *Evans,* as here, the applicant was entitled to file a later writ application which *did* attack the underlying conviction. 964 S.W.2d at 647. In *Evans,* this Court discussed *Ex parte Woodward,* 619 S.W.2d 179 (Tex.Crim.App.1981), and relied upon it for the proposition that art. 11.07 applies to a writ application complaining about a parole revocation procedure. *Id.* But *Evans* went on to hold that such claims do not constitute an attack upon the underlying conviction and thus an initial writ application complaining about a parole revocation procedure does not bar a later application which does attack the underlying conviction. *Id.* The reasoning and result in this case does not in any way affect the rea-

Under this definition, neither of applicant's first two filings qualified as an "initial application" for a writ of habeas corpus seeking "relief from a judgment imposing a penalty of death." Even if Mr. Kerr's first motion challenging the constitutionality of article 11.071 had been granted and the habeas statute disappeared, he would not obtain any relief from his capital murder conviction or death sentence. He is not being restrained under the habeas corpus statute. He is restrained by virtue of the judgment and sentence from the underlying capital murder trial. Similarly, the second habeas filing dealt solely with a stay of execution and an allegation of ineffective assistance of the original habeas counsel. Applicant is not being restrained because of the conduct of his original habeas counsel. Even if a majority of this Court were to recognize an allegation of ineffective assistance of habeas counsel,[16] that is a purely derivative claim, one which would simply avoid a procedural bar and allow the habeas applicant to have the merits of his underlying constitutional claim heard.

In short, Mr. Kerr's only habeas corpus application seeking relief from the underlying judgment of conviction is the present one. He is entitled to have the merits of that initial application heard and decided.

### III.

We decline to place blame upon anyone for Mr. Kerr's present situation. The original habeas counsel was competent and qualified to handle this matter when he was appointed. *See Ex parte Mines,* 26 S.W.3d 910, 912 (Tex.Crim.App.2000) (stating that, for purposes of appointment of "competent counsel" in context of art. 11.071, "competent" refers to an attorney's qualifications and abilities). He made what we characterize as an innocent mistake in filing an initial document entitled "application for post-conviction writ of habeas corpus" which was, in its substance, akin to a motion for extension of time: counsel believed that he should not be required to file a substantive writ of habeas corpus until his writ of certiorari to the United States Supreme Court had been accepted or rejected.[17]

---

soning or result in *Woodward,* but it is entirely consistent with *Evans.*

In *Ex parte Whiteside,* 12 S.W.3d 819 (Tex.Crim.App.2000), this Court held that if an inmate files an initial writ application challenging his conviction, he is barred from having the merits of a second writ application (even one complaining of the parole revocation process which does not challenge the underlying conviction) considered unless he meets the special exceptions under art. 11.07, § 4. Neither the reasoning nor result in this case have any effect upon the reasoning or result in *Whiteside* since this is applicant's *first* writ application challenging his judgment. He is in the same position as the habeas applicant in *Evans;* he is not in the same position as the applicant in *Whiteside.*

In *Ex parte McPherson,* 32 S.W.3d 860, 861 (Tex.Crim.App.2000), this Court reiterated its holding in *Evans* and held that a first writ application alleging ineffective assistance of counsel on appeal did not bar a later writ

application which challenged the underlying conviction. *Id.* at 861. The first writ simply sought an out-of-time appeal, it "did not directly seek to over turn the conviction." *Id.* Once again, the reasoning and result in this case is precisely in line with the reasoning and result in *McPherson.*

In sum, this case does not "disavow" or deviate from these four habeas cases. It follows precisely in their path.

16. *See Ex parte Graves,* 2002 WL 4528, No. 73,424 (Tex.Crim.App. delivered January 2, 2000)(holding that an ineffective assistance of habeas counsel claim is not cognizable on a subsequent writ under art. 11.071).

17. The original habeas counsel's verbatim contentions were:

1) that by requiring a writ application prior to the deadline for the filing of a petition for writ of certiorari, Article 11.071 infringes

We are confident that this sort of mistake will not be made by other counsel after today. Although it is possible to characterize the original habeas attorney's filing as a Machiavellian strategy designed to thwart the proper statutory procedure for filing a death penalty writ, we have no reason to make that conclusion in this particular case. If future habeas counsel were to indulge in such a strategy (which we doubt), we have both the statutory and plenary authority to hold that attorney accountable via our powers of contempt,[18] orders removing or denying compensation to dilatory counsel,[19] reporting violations of the Texas Disciplinary Rules of Professional Conduct to the appropriate State Bar officials, as well as other remedies.[20]

■ Similarly, trial courts who make the original appointment of habeas counsel under art. 11.071, § 2(c), have the authority to monitor the progress and timely filing of an initial application for a writ which qualifies as one which "seeks relief from a judgment imposing a penalty of death."[21] We are confident that Texas trial judges can identify and deal appropriately with any recalcitrant or dilatory habeas counsel.

In sum, we hold that the timely filed document submitted by applicant's original habeas counsel was not "a writ of habeas corpus in which the applicant seeks relief from a judgment imposing a penalty of death." Therefore, the application for a writ of habeas corpus filed by Mr. Kerr's present habeas counsel on August 6, 2000, is his initial writ for purposes of art. 11.071. We consider it timely filed as of today's date, issue the writ by operation of law pursuant to art. 11.071, § 6(a), and return the initial application and all associated materials to the trial court for further proceedings.

JOHNSON, J., filed a concurring opinion.

KELLER, P.J., filed a dissenting opinion to the order, joined by KEASLER, J.

HERVEY, J., not participating.

JOHNSON, J., filed a concurring opinion.

I join Parts I and II of the majority opinion and concur in the judgment of the Court.

As the majority holds, the original application was so lacking in merit that it cannot even be considered a true application for a writ of habeas corpus. However, I

---

upon the Supreme Court's review of Mr. Kerr's direct appeal, making such review by the Supreme Court less likely, if not altogether impossible;

2) that by requiring a writ application prior to the deadline for the filing of a petition for writ of certiorari, Article 11.071 requires Mr. Kerr to collateral[ly] attack a conviction which is not yet final, something that makes 11.071 internally contradictory and something which is prohibited by prior precedent of the Court of Criminal Appeals.

**18.** *See, e.g,* Tex.Code Crim. Proc. Art. 11.071, § 4A (c); Tex. Gov't Code § 82.061 ("[a]n attorney at law may be fined or imprisoned by any court for misbehavior or for contempt of court"); *see also Guillory v. State,* 557 S.W.2d 118, 120 (Tex.Crim.App.1977) (appointed attorney who failed to timely file appellate brief could be held in contempt, reported to State Bar grievance committee, be removed from specific representation and prevented from receiving future appointments).

**19.** *See, e.g.,* Tex.Code Crim. Proc. Art. 11.071, § 4A(c).

**20.** *See Guillory,* 557 S.W.2d at 120.

**21.** *See, e.g.,* Tex. Gov't Code § 82.061, *supra; Talley v. State,* 593 S.W.2d 702, 704 (Tex. Crim.App.1980) (trial courts have authority to punish with contempt—or invoke other *Guillory* options—recalcitrant appointed attorneys who fail to timely file appellate briefs).

disagree with the position of the majority that this Court "decline[s] to place blame upon anyone for [applicant's] situation," *ante*, at 420, and that "[the] original habeas counsel was competent and qualified to handle this matter when he was appointed." *Id.* Holding a general license to practice law does not guarantee that the attorney possesses sufficient knowledge of relevant areas of law such that the client receives competent counsel rather than the mere presence of a licensed attorney. Mere presence is not enough.

I also cannot agree that it is possible to differentiate between "competent counsel" and "effective counsel." *Ex parte Graves*, # 73,424, 2002 WL 4528, slip op. at 16–17 (Tex.Crim.App.2002). As I said in *Ex Parte Graves, Id.* at —— n. 3 (slip op. at 4 n. 3) (Johnson, J., dissenting), the United States Supreme Court has made it clear that "competent" encompasses "effective." That "effective" counsel is required is also indicated by the legislative history cited by the majority when it quoted Representative Pete Gallego; "[W]e are going to give you one *very well-represented* run at a habeas corpus proceeding." *Ante*, at 418-19 (Emphasis added.)

In any case, this Court bears some responsibility in this matter, as we appointed the counsel who filed the initial "non-writ." As the majority notes, one of the stated purposes of the current *habeas* statute for death-penalty applicants is to give those applicants "one very-well represented run at a habeas corpus proceeding." *Ante*, at 418-19. That surely cannot be said of the previous application here.

This case, combined with *Graves*, allows relief on a claim of ineffective assistance of *habeas* counsel only when *habeas* counsel is so ineffective that the writ application filed cannot even be considered a true writ application. Surely we can do better than that.

KELLER, P.J., filed a dissenting opinion joined by KEASLER, J.

The Court concludes that applicant's first application for writ of habeas corpus was not in fact a true application for writ of habeas corpus. Because I disagree with this conclusion, I must dissent.

We have construed the non-capital habeas statute, Article 11.07, on several occasions. Before the enactment of Article 11.071 in 1995, Article 11.07 covered both death penalty and non-death penalty cases. Within the same bill that enacted Article 11.071, the Legislature added §§ 1 and 4 to Article 11.07.[1] The death penalty and non-death penalty amendments were discussed together by their sponsor in committee.[2] Given the common history of the death penalty and non-death penalty provisions, they should be construed the same, except where differences in the language of the provisions dictate otherwise.

Applicant's first application was styled an "application for writ of habeas corpus" under Texas Code of Criminal Procedure, Article 11.071. The attorney who drafted that application was appointed in accordance with the provisions of Article 11.071.[3] The Court contends that the application nevertheless does not constitute a true writ application under Article 11.071 because "it did not attack applicant's capital murder conviction or death sentence.

---

1. *See* Acts 1995, 74th Leg., ch. 319, §§ 1 and 5.

2. *See Ex Parte Torres*, 943 S.W.2d 469, 473 n. 6 (Tex.Crim.App.1997)(citing S.B. 440, Senate

Committee on Criminal Justice, March, 14, 1995, Tape 1, Side 1).

3. *See* Article 11.071, § 2(a)-(c).

It raised no constitutional or jurisdictional claims concerning the fundamental fairness of the underlying trial or the accuracy of the verdict."[4] The Court asserts that this type of claim fails to satisfy Article 11.071, § 1's requirement that the application seek "relief from a judgment imposing a penalty of death."[5]

However, we have construed parallel language in Article 11.07 in a manner contrary to this conclusion. Article 11.07, § 1 contains language virtually identical to the Article 11.071, § 1 language referenced by the Court, to wit: "This article establishes the procedures for an application for writ of habeas corpus in which the applicant seeks relief from a ... judgment...."[6] The two provisions differ only in the type of judgment referenced, with Article 11.071, § 1 referring to "a judgment imposing a penalty of death" and Article 11.07, § 1 referring to "a felony judgment imposing a penalty other than death." Yet, in the Article 11.07 context, we have recognized as cognizable claims that do not attack the underlying trial or the verdict, including attacks upon parole revocation procedures[7] and requests for out-of-time appeals.[8] In *Ex parte Whiteside*, we stated that the wording in Article 11.07, § 1 was simply meant to "indicate that, after the enactment of Article 11.071, Article 11.07 would apply only to non-capital habeas applications, as distinguished from capital habeas applications."[9] In so concluding, we rejected the contention in Judge Womack's concurring opinion that after

1995, Article 11.07 no longer applied to claims that did not seek relief from a judgment.[10] Under the same reasoning, the Article 11.071, § 1 "seeks relief from a judgment" language was not meant to narrow the class of claims cognizable in the death penalty habeas setting, but was instead simply meant to designate Article 11.071 as the provision applicable to death penalty cases.[11] It follows that an applicant's claims need not attack the trial, verdict, or sentence to be cognizable in a capital habeas corpus setting.

The Court extends its holding to Article 11.07 applications, as logically it must. But if the provisions of Article 11.07 do not apply to pleadings that fail to "seek relief from a judgment," then Article 11.07 would, presumably, not be available for claims involving such matters as parole revocations, out-of-time appeals, and time credits. Aside from the fact that we have held that these claims *are* cognizable under Article 11.07, this interpretation leaves us with the unfortunate result that Article 11.07 does not apply to a great number of the habeas applications filed in this Court. I do not know by what method claimants in such instances will now seek relief, but even if there is a vehicle outside of Article 11.07, the claims will not be subject to the Article 11.07 subsequent application restrictions, and one of the primary aims of that legislation will be defeated.

Moreover, the Legislature has indicated that time credit claims, at least, are cognizable under Article 11.07. Section

4. Court's opinion at 416.

5. Court's opinion at 416 (quoting Article 11.071, § 1).

6. *See* Article 11.07, § 1; *Compare with* Article 11.071, § 1.

7. *Ex Parte Evans*, 964 S.W.2d 643, 648 (Tex. Crim.App.1998); *Ex Parte Woodward*, 619 S.W.2d 179 (Tex.Crim.App.1981).

8. *Ex Parte McPherson*, 32 S.W.3d 860, 861 (Tex.Crim.App.2000).

9. *Ex Parte Whiteside*, 12 S.W.3d 819, 822 n. 1 (Tex.Crim.App.2000).

10. *Id.*

11. *See id.*

501.0081 of the Government Code provides that inmates may not raise a time-served credit error in an application "under Article 11.07" unless certain requirements have been met. With the enactment of § 501.0081 in 1999, the Legislature put to rest any contention that Article 11.07 applies *only to claims that seek relief from a judgment.*

The two habeas corpus statutes do differ in one significant respect: Article 11.071 does not contain the "challenging the conviction" language that limits subsequent applications. While Article 11.07 § 4 bars a subsequent application for writ of habeas corpus if it is filed "after final disposition of an initial application *challenging the same conviction,*" Article 11.071 § 5 bars a subsequent application if it is filed "after filing an initial application." [12] In *Evans,* we found the presence of the "challenging the same conviction" language to be controlling in our determination that certain types of claims made in an initial application would not bar a subsequent application. [13] In *Whiteside,* we found the absence of that language with reference to subsequent applications to mean that the "challenging the same conviction" limitation did *not* apply to subsequent applications. [14] As a result, in non-death penalty cases, once an initial application challenging the conviction has been finally disposed, all subsequent applications are barred (unless they meet one of the enumerated exceptions) regardless of whether the subsequent application constitutes a challenge to the conviction. [15] We said in *Whiteside* that the fact that the Legislature placed the "challenging the conviction" limitation in one

part of the statute but not another indicated the Legislature's intent that the limitation not apply in the part of the statute in which it is absent. [16] The same logic applies to Article 11.071. Given that Articles 11.071 and the revisions to Article 11.07 were adopted together in the same bill and contain some parallel language, we should assume that the differences in language are material and intended by the Legislature. Because the "challenging the conviction" language is wholly absent from Article 11.071, § 5, the logical conclusion is that, in death penalty cases, *any* initial application, regardless of whether it attacks the conviction, triggers the § 5 bar for all subsequent applications.

The Court's interpretation of Article 11.07 and Article 11.071 effectively disavows a number of cases, new and old, dealing with an applicant's ability to raise claims under Article 11.07, including *Evans, Whiteside, Woodward,* and *McPherson.* The result in this case may be appealing, but in the long run, I cannot agree that it is correct.

For these reasons, I conclude that the present application is indeed a subsequent application subject to § 5. Because applicant fails to meet the enumerated exceptions, [17] this application should be barred. I respectfully dissent.

---

**12.** *See* Article 11.07, § 4(a)(emphasis added) and Article 11.07, § 5(a). Both provisions contain exceptions which are not relevant to the present discussion.

**13.** 964 S.W.2d at 646–647.

**14.** 12 S.W.3d at 821.

**15.** *Id.*

**16.** *Id.*