IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-75,405






EX PARTE LELAND HAROLD BROOKS, Applicant








ON APPLICATION FOR A WRIT OF HABEAS CORPUS


FROM HARRIS COUNTY






 Meyers, J., delivered the opinion of the Court, in which Keller, P.J., and Price,
Johnson, Keasler, Hervey, Holcomb, and Cochran, JJ., joined. Womack, J.
concurred.



O P I N I O N



 

 This is a subsequent application for a writ of habeas corpus forwarded to this
Court pursuant to Article 11.07, section 3, of the Texas Code of Criminal Procedure. (1) 
Applicant was convicted of possession of a controlled substance. (2) Due to two prior
felony convictions, punishment was assessed at a term of life imprisonment. See Tex.
Health & Safety Code Ann. § 481.112(a). Applicant appealed, and the court of appeals
affirmed the conviction. Brooks v. State, no. 03-00-00026-CR 2000 Tex. App. LEXIS
8014 (Tex.App.-Austin, November 30, 2000, pet. ref'd) (not designated for publication).

 In 2002, Applicant filed a post-conviction application for a writ of habeas corpus. 
The application was denied without written order. Applicant filed this subsequent
application, claiming that he is actually innocent and would not have been convicted but
for the following constitutional violations: his conviction was obtained by use of evidence
gained pursuant to an unconstitutional search and seizure; the conviction was obtained by
the trial court's denial of Applicant's right to be confronted by a confidential informant;
and the prosecutor knowingly used perjured testimony.

 We filed and set this case to explain the application of Texas Code of Criminal
Procedure Article 11.07, section 4(a)(2), which states that an application must contain
sufficient specific facts establishing by a preponderance of evidence that, but for a
constitutional violation, no rational juror would have found applicant guilty beyond a
reasonable doubt. (3) We conclude that an applicant must accompany constitutional-violation claims with a prima facie claim of actual innocence in order to satisfy the
requirements of Article 11.07, section 4(a)(2). 

FACTS

 A confidential informant told police that Applicant's brother, George Brooks, was
selling cocaine out of his hotel room. (4) Officers were familiar with Applicant's brother
and went to the hotel to observe the room that was registered in the name of George
Brooks. They observed George Brooks taking a bag from the trunk of his car into his
room. Shortly thereafter, George Brooks and another man left in Applicant's car, but
Applicant stayed in the room. Uniformed officers followed the car and pulled the driver
over for committing a traffic violation. Both George Brooks and the other man in the car
were arrested for possession of marijuana found in the car. After Applicant's brother was
arrested, the officer who was observing the hotel room knocked on the door, and
Applicant answered. The officer testified that, when Applicant opened the door, the
officer noticed a plastic bag containing a white powder on a table just inside the room. 
Suspecting that the plastic bag contained drugs, the officer then obtained a warrant to
search the rest of the room. On a shelf in the closet, officers found the bag George
Brooks had retrieved from his car, which contained over 50 grams of cocaine, a set of
scales, and small plastic bags. There was also a loaded handgun in the night-stand
drawer. The plastic bag that was visible when Applicant opened the door was later
determined to contain 19 grams of cocaine. Applicant was charged with, and convicted
of, possessing cocaine weighing more than four grams and less than 200 grams.

 In his memo in support of the application for writ of habeas corpus, Applicant
states that he is entitled to a new trial based on his claim of actual innocence because he
was denied his constitutional right to confront the State's confidential informant, who was
mentioned in the testimony of the arresting officer, and because newly discovered
evidence that was previously unavailable to him demonstrates that there was never a
confidential informant against him. (5) Applicant states that he was an innocent bystander
and was merely present in another defendant's residence where cocaine and a firearm
were concealed without his knowledge. The newly discovered evidence Applicant refers
to is an affidavit from his brother, George Brooks, whose arrest led to the search of the
apartment where Applicant was arrested. The affidavit states that George Brooks was the
sole resident of the apartment and that he was the sole owner of the handgun and of the
cocaine that the police found when they searched his apartment. George Brooks states
that he agreed to a lesser sentence in exchange for testimony that the cocaine was not his;
however he testified at Applicant's trial that the drugs belonged solely to him. He also
testified at trial that Applicant did not have care, custody, or control of the apartment
where the drugs were found and that Applicant had no knowledge that there was a gun or
drugs in the apartment. 

ANALYSIS

 Article 11.07, section 4(a) prohibits review of subsequent applications for writ of
habeas corpus except in limited circumstances. The applicant must establish one of the
following exceptions: 

 (1) the current claims and issues have not been and could not have been
presented previously in an original application or in a previously considered
application filed under this article because the factual or legal basis for the
claim was unavailable on the date the application filed the previous application; or


 (2) by a preponderance of evidence, but for a violation of the United States
Constitution no rational juror could have found the applicant guilty beyond
a reasonable doubt. 


Tex. Code Crim. Proc. Ann. art. 11.07, § 4(a). Prior to the adoption of the Habeas
Corpus Reform Act of 1995, which included the adoption of Article 11.071 (6) and the
addition of section 4 to Article 11.07, there was no statute restricting the filing of
subsequent applications. The purpose of the Habeas Corpus Reform Act of 1995 was to
fulfill the Texas Constitutional mandate requiring a speedy and effective habeas corpus
remedy by limiting the availability of subsequent applications and encouraging all-inclusive initial applications. Ex parte Kerr, 64 S.W.3d 414, 418 (Tex. Crim. App. 2002). 
Prior to 1995, we did not consistently apply the "abuse-of-the-writ" doctrine. Id. 

 The subsequent-application provision adopts the abuse-of-the-writ doctrine used in
federal practice, which limits an inmate to one application for writ of habeas corpus
except in exceptional circumstances. Specifically, the subsequent-application provisions
in Articles 11.07 and 11.071 were enacted in response to Schlup v. Delo, 513 U.S. 298. 
In Schlup, the United States Supreme Court ruled that the federal habeas corpus petitioner
must show that a constitutional violation "more likely than not" resulted in the conviction
of an innocent person. Id. at 327. This was an adoption of the Carrier (7) standard. The
more stringent Sawyer (8) standard was rejected, and the Court reasoned that, in a case in
which the petitioner claims that a constitutional error resulted in the conviction of one
who is actually innocent of the crime, the Carrier standard strikes the balance between
the societal interest of finality and the individual interest in justice. Schlup, 513 U.S. at
324. The Court discussed the need for an exception to adequately protect against the kind
of miscarriage of justice that would result from the execution of a person who is actually
innocent. "To ensure that the fundamental miscarriage of justice exception would remain
'rare' and would only be applied in the 'extraordinary case,' while at the same time
ensuring that the exception would extend relief to those who were truly deserving, this
Court explicitly tied the miscarriage of justice exception to the petitioner's innocence." 
Id. at 321. While Schlup involved a federal habeas corpus petition in a death-penalty
case, the reasoning can be equally applied to both Texas Code of Criminal Procedure
Articles 11.07, section 4(a), and 11.071, section 5(a)(2). A credible claim of actual
innocence serves to bring the petitioner within the "narrow class of cases" implicating a
fundamental miscarriage of justice. Id. at 315. In other words, showing actual innocence
by a preponderance of evidence is a gateway through which a habeas petitioner must pass
in order to have an otherwise-barred constitutional claim considered on the merits. Id.,
citing Herrera v. Collins, 506 U.S. at 404. 

 The situation in this case can be analogized to claims under another subsequent-
writ provision, Article 11.071, section 5(a)(1), in which the merits of a subsequent writ
may be considered if the application contains sufficient specific facts establishing that the
legal basis for the claim was unavailable when the applicant filed the previous
application. In Ex Parte Staley, 160 S.W.3d 56, 64 (Tex. Crim. App. 2005), we stated
that "a death-row inmate may file a subsequent writ application based upon the newly
available legal claim of mental retardation under Atkins v. Virginia, but if his application
states that his I.Q. has repeatedly been tested at 120-130, he has failed to state sufficient
specific facts establishing a cognizable claim under Atkins." While Article 11.071,
section 5(a)(1) does not state that the application must include facts establishing that the
applicant has a prima facie Atkins claim, it would be absurd to consider applications in
which the applicant does not show that the previously unavailable legal basis applies to
his claim. To read the statute otherwise would mean that every time a new law is passed
or precedent is set, every inmate could file a subsequent application for writ of habeas
corpus, regardless of whether the newly available legal basis applied to his situation, and
the court would have to consider the merits. This clearly undermines the purpose of the
subsequent-writ provisions. Similarly, while the text of section 4(a)(2) does not
specifically state that the applicant must make a prima facie claim of actual innocence in
addition to the claim of a constitutional violation, it is inherent in the subsequent-writ
provisions that the applicant meet the threshold requirement before the merits of his claim
will be considered. It is not necessary for an applicant to prove his innocence, rather, all
that is necessary is a prima facie showing of actual innocence, sufficient to overcome
section 4, so that we can then consider the merits of the claim. 

 The purpose of the subsequent-writ provisions is to provide review only in those
cases where the legal basis for the claim was previously unavailable, or to remedy a
"miscarriage of justice." In Schlup, the "miscarriage of justice" was explicitly tied to
cases of actual innocence. 513 U.S. at 314-15. Limiting section 4(a)(2) to review of only
those applications containing prima facie claims of actual innocence prevents abuse of the
writ, which was the goal of the subsequent-writ provision. But it also allows review of
the merits in the exceptional circumstances of a constitutional violation resulting in the
conviction of one who is actually innocent of the offense. On the other hand, for us to
review applications lacking a prima facie claim of actual innocence re-opens the door to
potential abuse of the writ and ignores society's interest in finality of judgment. 

CONCLUSION

 Under section 4, we may not consider the merits of an application unless it
includes sufficient specific facts establishing by a preponderance of the evidence that, but
for a constitutional violation, no rational juror would have found the Applicant guilty. 
We have determined that this necessarily includes a prima facie showing of actual
innocence in order for the applicant to demonstrate that the constitutional violation at his
trial resulted in a miscarriage of justice. This showing allows us to consider a
constitutional claim which otherwise would have been barred by section 4. In the case
before us, Applicant states that he is actually innocent, "that he was an innocent bystander
and had no knowledge of drugs and a firearm," and that "parts of the trial record would
clearly demonstrate and prove Petitioner's actual innocence." However, this is not
enough for us to consider the merits of his application. The basis of Applicant's
innocence claim is that his brother, George Brooks, was the sole target of the
investigation. While this may be true, it does not change the fact that the investigation of
George led officers to Applicant. And, when the officer first spoke to Applicant, there
were 19 grams of cocaine in plain view in the room in which he was the sole occupant. 
Applicant does not meet the threshold requirement of showing that a constitutional
violation led to a miscarriage of justice due to the incarceration of someone who is
actually innocent. Because Applicant does not include a prima facie claim of actual
innocence in addition to his constitutional claims, this application is dismissed under
Article 11.07, section 4. 

 Meyers, J.


Delivered: April 4, 2007


Publish
1. All references to Articles refer to Texas Code of Criminal Procedure. 
2. The indictment also alleged that Applicant used and exhibited a deadly weapon, however
the jury found him not guilty of the deadly weapon possession.
3. The circumstances presented in this case raise a Schlup claim. Schlup v. Delo, 513 U.S.
298 (1995). We do not address the application of Texas Code of Criminal Procedure Article
11.07, section 4(a)(2), to Herrera claims. See Herrera v. Collins, 506 U.S. 390 (1993).
4. Applicant and his brother refer to the hotel room as George Brooks' apartment. 
5. It appears that the evidence of the prosecutor knowingly using perjured testimony is that
the confidential informant told police about Applicant's brother, George Brooks, but did not give
any information about Applicant. Therefore, the officer who testified at Applicant's trial should
not have mentioned the confidential informant because that implied that there was a confidential
informant against Applicant. 
6. Article 11.071 provides the procedure for death-penalty cases. The language in Article
11.071, section 5(a)(2) is identical to that in Article 11.07, section 4(a).
7. See Murray v. Carrier, 477 U.S. 478, 496 (1986). The Carrier standard requires the
habeas petitioner to show that "a constitutional violation has probably resulted in the conviction
of one who is actually innocent." To establish the requisite probability, the petitioner must show
that it is more likely than not that no reasonable juror would have convicted him in light of the
new evidence. Schlup, 513 U.S. at 327.
8. Sawyer v. Whitley, 505 U.S. 333 (1992) (holding that a habeas petitioner must show by
clear and convincing evidence that, but for a constitutional error, no reasonable juror would have
found the petitioner eligible for the death penalty).