**In re STATE of Texas EX REL. Brian RISINGER, Relator**

NO. WR–84,212–01

Court of Criminal Appeals of Texas.

Filed: March 23, 2016

Alcala, J., filed a concurring statement.

After spending considerable resources to address the late pleadings, today this Court finally reaches the decision that was plainly evident to me based on my review of the record months ago. I, therefore, join the instant order in which this Court properly declines to impose sanctions on Holiday's attorneys Frank Blazek and William F. Carter. I write separately to briefly expand upon my rationale.

## I. Background

On the day of Holiday's execution, the trial court halted the scheduled execution. The trial court had found counsel's motion to withdraw the scheduled execution date meritorious, and the execution was called off. The State responded to the trial court's order by filing a petition for a writ of mandamus in this Court late in the afternoon on that same day. Holiday's counsel filed a detailed response to the State's petition, arguing that there was no binding precedent from this Court that supported overturning the trial court's order. Within twenty minutes of receiving counsel's response, this Court's majority order granted the State's petition. Thus, all within the span of a single day, Holiday's scheduled execution date was withdrawn by the trial court and then later reinstated by this Court.

On the night of Holiday's execution, another judge on this Court and I each dissented from this Court's majority order that effectively compelled the execution to proceed despite the trial court's contrary ruling. I issued a dissenting statement explaining my view that the law was unsettled as to whether the trial court was authorized to withdraw the scheduled execution date and, thus, the State was not entitled to mandamus relief. The other judge dissented without opinion.

Several weeks after Holiday's execution, this Court issued its show-cause order requiring Holiday's counsel to appear before this Court to more fully explain their reasons for the late filing. I again filed a dissenting statement, and the same judge who had dissented on the night of the execution filed a concurring statement. As I explained in my dissenting statement at that time, and as the concurring statement agreed with me, this Court's majority erred in its execution-night ruling because it should have denied the State's petition for mandamus relief and instead allowed the trial judge's order to stand. Thus, my dissenting statement and the concurring statement agreed on the important matter that Holiday should not have been executed that night, although we each reached our ultimate conclusions by different rationales. Regarding my view that the issuance of a show-cause order was, under the circumstances, wholly unnecessary, I explained that the "particular facts of this case show that Blazek and Carter did not exhibit the kind of flagrant disregard for the rules that would justify sanctions." *See In re State ex rel. Risinger,* 479 S.W.3d 250, 277 (Tex.Crim.App. 2015) (Alcala, J., dissenting). I expressed my concern that sanctioning counsel "carries with it the possibility of a chilling effect on attorneys who might otherwise be willing to represent capital-murder defendants." *Id.* at 278. The concurring statement, however, suggested that the better course was to wait to hear from counsel before deciding whether to sanction them.

## II. Analysis

I remain convinced that the show-cause hearing itself was unnecessary and inappropriate in this case. Although counsel

conceded at the show-cause hearing that their good-cause affidavits were inadequate to explain their late filing, it was abundantly clear to me, based on having reviewed the entire record prior to the hearing, that counsel did not have the intent to behave contemptuously or to flagrantly disregard this Court's rules.

The matter before the Court a few months ago was whether to order the show-cause hearing at all. The choice before the Court at that time was whether (1) not to issue the show-cause order because, based on the existing record, there were adequate facts to excuse the attorneys' late filing in this case, or alternatively (2) to issue the show-cause order because the existing record suggested that the attorneys should be possibly sanctioned for their late filing. In my dissenting statement, I explained my rationale for voting against the issuance of the show-cause order, including a lengthy discussion of the facts that existed in the record prior to the show-cause hearing that were adequate to show that Holiday's attorneys filed their motion in the trial court at the earliest possible opportunity after learning that Holiday's appointed counsel had effectively abandoned him and that Holiday was in need of counsel. I explained that the mere ordering of a show-cause hearing at which counsel is compelled to appear to face questioning by this Court has the likely effect of chilling the behavior of other attorneys who might otherwise be willing to provide free representation for indigent capital-murder defendants facing imminent execution. Thus, the mere issuance of the show-cause order, and not the sanction alone, may result in a chilling effect on the defense bar.

Just because an attorney files something late does not mean that this Court should conduct a show-cause hearing, much less hold the attorney in contempt. This Court should examine the totality of the circumstances in the record to decide whether an attorney's actions were so extreme that they rose to the level of being contemptuous. The question is not whether a rule was violated. Rather, the test for contempt requires something extreme and willful. Mistakes, even big ones, are not the equivalent of contempt. Contempt hearings should be rarely conducted, and I suspect that most judges in Texas have never held one. Yet, in approximately the past year, this Court has held two of these hearings, both of them occurring as a result of late filings in death-penalty cases. Even if this Court eventually decides not to hold attorneys in contempt, as here, I am concerned that this Court's practice of holding show-cause hearings under these circumstances may itself become a tool of submission against the criminal defense bar. A show-cause hearing and a decision to hold a lawyer in contempt should, at most, be a once or twice in a judge's career type of event, but it seems to be becoming a once or twice a year type of event in this Court. This is concerning in that there are a dozen or so executions each year, and even one or two show-cause hearings are greatly disproportionate to the number of those cases.

As an alternative to this Court's practice of holding show-cause hearings in these situations, this Court could instead consider the possibility of referring lesser violations of this Court's seven-day rule to the State Bar of Texas so that it may review the attorney's behavior. There are rules in the Texas Rules of Professional Conduct designed to regulate attorneys' behavior to ensure that they behave ethically, and all attorneys are well-aware that they are compelled to adhere to these rules or face possible sanctions for violating them. Rule 3.02 states, "In the course of litigation, a lawyer shall not take a position that increases ... burdens of the case or that

unreasonably delays resolution of the matter." Rule 3.04(d) mandates that a lawyer shall not "knowingly disobey ... an obligation under the standing rules of ... a tribunal." This Court, therefore, could reserve its contempt power for 'only those extremely egregious circumstances in which it is necessary for this Court to intervene to preserve the integrity of the judicial branch. In my estimation, the State Bar of Texas could be entrusted to regulate attorney misbehavior in all but the most extreme circumstances that require judicial intervention through the power of contempt. And, perhaps, the additional threat of facing sanctions from the State Bar might result in fewer violations of this Court's seven-day rule.

This Court has paid intensive and extensive attention to Holiday's attorneys' late filing. As to whether Holiday's attorneys should be sanctioned, this Court, as a whole, has expended dozens of hours to address that matter as shown by these seven events: (1) this Court's majority issued a show-cause order; (2) a judge issued a concurring statement to the show-cause order; (3) I issued a dissenting statement to the show-cause order; (4) this Court held a show-cause hearing at which counsel appeared for questioning by various judges; (5) this Court is issuing the instant majority order; (6) I am issuing my instant concurring statement; and (7) the same judge who earlier issued a concurring statement now issues another concurring statement. A question arises, therefore, as to whether this extensive amount of attention paid to the attorneys' late filing was warranted in this case. With respect to that matter, I acknowledge that, during the live hearing, the attorneys conceded that their good-cause statements were inadequate to explain their late filing. I observe, however, that it would have been inconceivable, at that juncture, for counsel to say anything but

that. Obviously, at that point, this Court's majority had already found counsel's good-cause statements inadequate because they had been summoned and ordered to appear before this Court. When they made those concessions, they were being interrogated by judges of this Court and subject to serious sanctions. Arguing that they should not have been made even to appear at the live hearing, the same hearing at which they were currently appearing, was a moot point. And it likely would have been suicidal. The very strange thing about a contempt hearing before this Court is that this Court is the complainant of the late filing, the judge conducting the live hearing, the jury deciding whether to sanction counsel and, if so, what punishment might be imposed, and then there is no appeal. Given that the summons had already revealed that this Court found counsel's affidavits inadequate, arguing that the affidavits were adequate could have landed counsel in jail for contempt of court.

As to my substantive conclusion in this case, my point is simply that, as the federal courts and other Texas courts clearly understand, a show-cause hearing should be a measure of last resort for those extreme cases of contemptuous behavior. Absent facts that would indicate that such extreme behavior had occurred in a case, this Court's scarce resources are better spent resolving litigation that might result in the release of an innocent defendant or the final resolution of a victim's case.

I do not believe that the current procedure of conducting show-cause hearings under these circumstances is desirable for this Court, the litigants, or the public's confidence in the judicial branch. I would not have held the show-cause hearing at all in this case because the existing record was adequate to show that it was entirely unnecessary, given the lack of any indica-

tion that the attorneys acted contemptuously. Although I disagree with this Court's decision to hold the show-cause hearing, I agree with its ultimate decision not to sanction counsel, and, therefore, I join this Court's order.

Newell, J., filed a concurring statement.

The attorneys in this case, Frank Blazek and William Carter, violated this Court's Miscellaneous Rule 11–003 regarding late filings, in their effort to assist their former client, Raphael Holiday. In a refreshing showing of candor and humility, they each acknowledged as much in the show-cause hearing before this Court. In their defense, they claimed that they failed to follow this rule because they simply did not know it existed. This Court, having heard their statements and their answers to questions from different members of this Court, found the attorneys not only credible, but sincere.[1] This Court found that Mr. Blazek and Mr. Carter showed good cause that they should not be held in contempt for their acknowledged mistake, and every member of this Court joined in that determination. We announced our determination immediately after the hearing. I write separately to make a few observations.

Part of the delay in bringing the last-minute filing at issue before the trial court, and ultimately this Court, flowed from confusion regarding who represented Raphael Holiday. Section 2 of Article 11.071 of the Code of Criminal Procedure sets out procedures for the appointment of an attorney to represent a death-penalty defendant in filing his first application for writ of habeas corpus. Tex.Code Crim. Proc. art. 11.071 § 2(b-c). If this Court denies a defendant relief on his first application, subsection (e) requires the appointed attorney to move for appointment of counsel to assist in the filing of a writ of habeas corpus in federal court. Tex.Code Crim. Proc. art. 11.071 § 2(e). Common practice appears to be that, once the attorney on the first state writ is done, the attorney appointed on the federal writ continues to represent the death-penalty defendant in any additional filings in either federal or state court should the defendant be denied relief in the federal court system. However, this practice is not set out in the Code of Criminal Procedure. And there is no provision requiring appointment of counsel to assist a defendant in filing any subsequent applications for habeas corpus relief in state court.[2]

Mr. Blazek and Mr. Carter were appointed to represent Raphael Holiday at his capital-murder trial, and they continued that representation on direct appeal; neither Mr. Blazek nor Mr. Carter were appointed to assist the defendant on his application for habeas corpus relief in state court. Both attorneys appeared before the trial court on August 14, 2015, along with federal writ counsel, Seth Kretzer, when the trial court set Holiday's execu-

1. An audio recording of the show-cause hearing is available as an mp3 file on this Court's website for anyone who could care to listen to it for themselves. http://www.search.txcourts. gov/Case.aspx?cn=WR–84,212–01&coa= coscca

2. While this does not suggest that a trial court lacks authority to appoint counsel, appointing counsel in anticipation of a subsequent writ seems antithetical to the procedural bar to subsequent writs in section 5 of Article 11.071. The statutory scheme is designed to afford a capital-murder defendant "one full and fair opportunity to present his constitutional or jurisdictional claims". Ex parte Kerr, 64 S.W.3d 414, 419 (Tex.Crim.App. 2002). Starting out with a presumption that there will be a subsequent writ and there should be a subsequent writ attorney would be inconsistent with a scheme designed to afford only one full and fair bite at the apple.

tion date. At the show-cause hearing, Mr. Blazek acknowledged to this Court that Mr. Kretzer had informed the defendant at the August 14th hearing that there were not any other possibly meritorious filings to pursue. Mr. Blazek also stated that the defendant indicated he wanted someone to continue to fight for him.

According to both Mr. Blazek and Mr. Carter, on August 14th no one discussed in the trial court who was responsible for filing any last-minute pleadings on Holiday's behalf in state court. Mr. Blazek candidly admitted that, on August 14th, he had no intention of filing a subsequent application for a writ of habeas corpus on behalf of Mr. Holiday because he had never done one before and did not know how to do it. As far as Mr. Blazek knew, some other attorney bore that responsibility. According to Mr. Blazek, he did not even know he could file a motion to withdraw or modify the execution order until the day before the execution date. Had the trial court or the attorneys simply clarified at that August 14th hearing who would or should be filing any pleadings on Mr. Holiday's behalf, the delay in filing those pleadings could have been decreased.

Along those lines, both Mr. Blazek and Mr. Carter indicated they were unfamiliar with our Miscellaneous Rule 11–003 at the time they filed their last-minute motion to withdraw the execution order. Rule 11–003 is modeled on Rule 8.10 of the United States Court of Appeals for the Fifth Circuit, and it requires motions to stay an execution be filed at least seven days before the date of the scheduled execution date. *In re Dow,* 481 S.W.3d 215, 219, 222 (Tex.2015) (per curiam); *Procedures in Death Penalty Cases Involving Requests for Stay of Execution and Related Filings in Texas State Trial Courts and the Court of Criminal Appeals,* Misc. Docket No. 11–003 (Tex.Crim.App. June 30, 2011), *re-printed in* TEXAS RULES OF COURT 417–18 (west 2015), *available at* http://www.txcourts.gov/cca/practice-before-the-court/rules-procedures.aspx. This Court has had a rule setting deadlines based on scheduled execution dates in capital cases since 2008. *Dow,* 481 S.W.3d at 223. Both Mr. Carter and Mr. Blazek claimed that they were unfamiliar with the rule because they do not generally handle post-conviction matters in death-penalty cases. Incorporating Rule 11-003 into the Rules of Appellate Procedure or the Code of Criminal Procedure would surely help bring this rule to the attention of general practitioners.

While this experience for Mr. Carter and Mr. Blazek was surely not ideal, none of the above information would have come to light without the show-cause hearing. It seems unlikely to me that having a show case hearing that results in no finding of contempt will have any other effect than to encourage practitioners who file last-minute pleadings in death-penalty cases to be more careful about studying applicable rules. Both attorneys acknowledged that their explanations for filing the last-minute pleadings were deficient, and the transcript of the November 18th hearing on the motion to withdraw or modify the execution date provides no discussion regarding why the attorneys decided the day before the execution date to file their motion. Subsequent to our decision at the show-cause hearing in this case, this Court chose not to hold a show-cause hearing in another death-penalty case that also involved a last-minute pleading. *Ex parte Masterson,* No. WR-59,481-06 (Tex. Crim. App. Jan. 20, 2016)(not designated for publication). If that suggests a trend, it suggests a trend of restraint.

Finally, my previous concurring statement speaks for itself regarding the merits of this Court's decision to grant the State's

application for a writ of prohibition in Raphael Holiday's case. I would add only that even though I disagreed with the result reached by the Court on the writ of prohibition, the issue before the Court was discrete and clear with reasonable arguments supporting the Court's decision.[3] My colleagues' decisions not to write an opinion spelling out their thought processes when considering a last-minute pleading might not be my preference, but it does not indicate a lack of deliberation. It simply indicates judicial discretion.

With these thoughts I concur.

---

**3.** Again, there was no conflicting case law on the issue of whether the statute authorized a motion to withdraw. There was only a potential conflict on the issue of whether the trial court had the authority to withdraw the motion pursuant to its inherent authority.