**Ex parte Larry Michael WHITESIDE.**

No. 73,064.

Court of Criminal Appeals of Texas, En Banc.

March 1, 2000.

Larry Michael Whiteside, pro se.

Jeffrey L. Van Horn, Asst. St. Atty., Austin, Ernest Davila, Asst. DA, Houston, State's Atty., Austin, for the State.

## OPINION ON STATE'S MOTION FOR REHEARING

KELLER, J., delivered the opinion of the Court on rehearing in which McCORMICK, P.J., and HOLLAND, JOHNSON, and KEASLER, J.J., joined.

The State's Motion for Rehearing is granted, and our prior opinions in this case are withdrawn.

Applicant filed an initial 11.07 application in 1980, which "challenged the conviction," as that phrase has been interpreted in *Ex Parte Evans,* 964 S.W.2d 643 (Tex. Crim.App.1998), and subsequent applica-

tions in 1995 and 1997. We dismissed the 1995 application pursuant to § 4. We denied relief on the 1997 application, which concerned a time-credit issue that arose after the 1995 application. Applicant could not have raised his current claim in his initial 1980 application, but he could have raised it in his 1995 or 1997 applications.

In *Evans*, the applicant filed a first application raising various claims concerning a parole revocation hearing. 964 S.W.2d at 645. Later, he filed a second application seeking credit for time spent in custody both prior to trial and pursuant to a blue warrant. *Id.* We held that § 4 did not bar the second application because of the nature of the first application: the first application did not "challenge the conviction," and *"the procedural bar of § 4 is limited to instances in which the initial application raises claims regarding the validity of the prosecution or the judgment of guilt." Id.* at 646–647. (Emphasis added).

This case presents exactly that situation: "an instance in which the initial application raise[d] claims regarding the validity of the prosecution or the judgment of guilt." The question we confront is whether applicant may nevertheless avoid the § 4 bar because of the nature of his subsequent application, i.e., because it does not "challenge the conviction." We hold that he cannot.

 The starting point in any statutory construction analysis is the plain language of the statute in question. *Brown v. State*, 943 S.W.2d 35, 36 (Tex.Crim.App. 1997). When a statute is clear and unambiguous, we should apply the plain meaning of its words, unless that plain meaning leads to absurd results. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991). We may resort to extratextual factors only when the statutory language is ambiguous or the clear language leads to absurd results. *Id.* Article 11.07, § 4, provides in relevant part:

Sec. 4. (a) If a subsequent application for writ of habeas corpus is filed after

final disposition of an *initial application challenging the same conviction,* a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:

(1) the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application; or

(2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt.

(Emphasis added).

 Under the plain language of the statute, once an applicant files an application challenging the conviction, all subsequent applications regarding the same conviction must meet one of the two conditions set forth in § 4(a)(1) & (2). The Legislature modified "initial application" with the phrase "challenging the same conviction" but did not so modify "subsequent application." The lack of any language modifying "subsequent application" plainly indicates the Legislature's intent that "subsequent applications" include *all* subsequent habeas corpus applications regarding the same conviction, rather than only those that "challenge" the conviction.

Nor does application of the plain language lead to absurd results. We have previously determined that § 4 was intended "to limit a convicted person to 'one bite at the apple.'" *Ex parte Torres*, 943 S.W.2d 469, 474 (Tex.Crim.App.1997). Interpreting "subsequent applications" under § 4 to include all applications for writs of habeas corpus regarding the same conviction would most effectively achieve the Legislature's objective.

■ This application is dismissed pursuant to Article 11.07 § 4.[1]

PRICE, J., concurred in the result. WOMACK, J., delivered a concurring opinion. JOHNSON, J., delivered a concurring opinion.

MEYERS, J., delivered a dissenting opinion. MANSFIELD, J., delivered a dissenting opinion.

WOMACK, J., filed a concurring opinion.

The Court's opinion on rehearing does not mention the allegations in the application. The applicant was convicted of burglary in 1975. He makes no allegation that the judgment in that case subjects him to unlawful confinement. His claim is that the Department of Criminal Justice is denying him credit for periods of time in 1988 and 1989 during which he was confined to jail under parole-revocation warrants issued by the Board of Pardons and Paroles.

The Court sees the issue as whether this is "a subsequent application for writ of habeas corpus" as that term is used in Code of Criminal Procedure article 11.07, section 4. I would first ask whether it should be considered as an application for writ of habeas corpus under Article 11.07 at all.

The same act that added Section 4 to Article 11.07[1] also added Section 1:

This article establishes the procedures for an application for writ of habeas corpus *in which the applicant seeks relief from a felony judgment* imposing a penalty other than death.[2]

Before 1995, the statute simply required, "After final conviction in any felony case, the writ must be made returnable to the Court of Criminal Appeals of Texas at Austin, Texas." By those terms, any request for habeas corpus relief in any felony case after final conviction fell under Article 11.07. Thus an application for relief from an action of the Board of Pardons and Paroles or the Department of Criminal Justice (at least arguably) was an Article 11.07 petition.

After 1995, the procedures of Article 11.07, Sections 3–7, apply only to an application in which the applicant seeks relief from a non-capital felony judgment. *See id.*, Section 1. When Section 1 is kept in mind, most of the perceived difficulty with Section 4 disappears. Section 4 restricts a subsequent application that is filed after "an initial application challenging the same conviction." If we follow Section 1 and apply those restrictions only to applications that seek relief from a felony judgment, every (or almost every) subsequent application will follow "an initial application challenging the same conviction."

In other words, Section 1 and Section 4 should be construed in harmony. An initial application should be admitted to the post-conviction procedure only if (under Section 1) it "seeks relief from a felony judgment," and it will be an application that was "challenging the conviction" in

---

1. Judge Womack would dismiss the application on the ground that applicant's claim is not cognizable under Article 11.07. Judge Womack contends that the Legislature narrowed the class of claims cognizable on a post-conviction writ when it added § 1 in 1995: "This article establishes the procedures for an application for writ of habeas corpus *in which the applicant seeks relief from a felony judgment imposing a penalty other than death*" (emphasis added). We disagree. Prior to the revision of the language in 11.07, both capital and non-capital habeas applications were addressed under that statute. That leads us to believe that the reason the lan-

guage of Article 11.07 was amended was to indicate that, after the enactment of Article 11.071, Article 11.07 would apply only to non-capital habeas applications, as distinguished from capital habeas applications.

1. Act of June 7, 1995, 74th Leg., R.S., ch. 319, § 5, 1995 Tex. Gen. Laws 2764, 2771.

2. *Id.* at 2770 (emphasis added). Although Section 1 is correct, it is not complete; Article 11.07 also speaks to procedures for the writ of habeas corpus in a felony case before conviction. *See* TEX.CODE CRIM PROC. art. 11.07, § 2.

the terms of Section 4. There is no reason to suppose, as the Court does today, that the Legislature wanted to create a class of post-conviction applications under Section 1 that were not subject to the restrictions of Section 4. Such a supposition is not called for by the language of the statute, and it is manifestly contrary to the intent of the Act of June 7, 1995, which was "to limit a convicted person to 'one bite at the apple'" under Article 11.07. *Ex parte Torres,* 943 S.W.2d 469, 474 (Tex.Cr.App. 1997). The restrictions on subsequent applications which were imposed in Section 4 make it imperative that this Court carefully consider whether an application falls within Article 11.07. A decision that an application qualifies under Section 1 works severe consequences on subsequent applications.

We need not develop further the jurisprudence, which began in *Ex parte Evans,* 964 S.W.2d 643 (Tex.Cr.App.1998), about subsequent applications that follow initial applications that did not challenge the conviction but were still cognizable under Article 11.07, Section 1. There should not be any such initial applications.

I am aware that before 1995 habeas corpus petitions were received under Article 11.07 to challenge parole revocation and other executive actions. It seems plain to me that Article 11.07 no longer applies to such challenges after the 1995 amendments. I am aware also of our decision in *Ex parte Evans,* which I joined, that the restrictions of Section 4 did not apply to a subsequent application when the initial application was for relief from a order revoking parole. I agree that Evans' first application did not trigger the restrictions of Section 4; in fact, his first challenge to a parole revocation did not belong under Article 11.07 at all.

This application is like Evans' initial application. Whiteside's application does not seek relief from a felony judgment. The applicant neither complains of the 1975 judgment nor seeks relief from it. He seeks relief from agencies in the executive branch which are not giving him credit for a period of confinement in 1988 and 1989 pursuant to an executive warrant for parole violation. The procedures of Article 11.07, including the restrictions of Section 4, are not applicable to this application.

I would dismiss this application without prejudice to an action under other provisions of the Constitution or laws of the state.

JOHNSON, J., delivered a concurring opinion on rehearing.

I join the majority opinion and write separately to express my concern over inequities that may occur merely as the result of the sequence of the filing of habeas corpus applications.

If the initial application does not "challenge the conviction," a subsequent application pertaining to the same conviction is not barred by Article 11.07, § 4. *See Evans,* 964 S.W.2d 643 (Tex.Crim.App.1998). On the other hand, should the initial application "challenge the conviction," a subsequent application pertaining to the same conviction is barred and will not be addressed on the merits unless it meets one of the conditions set forth in Article 11.07, § 4(a)(1) or (2). This means that if an applicant alleges miscalculation of time credits in the first application and then challenges the conviction on the merits, the writ is not barred. On the other hand, if the challenge to the conviction on the merits is first, an application alleging miscalculation of time credits is barred, even though it itself is not a "challeng[e to] the same conviction." Although this result may not seem *fair,* it is consistent with the language of the statute.

When a statute is clear and unambiguous, we should apply the plain meaning of its words, unless the plain meaning leads to absurd results. *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App.1991). That a result may not seem fair does not necessarily render it absurd. I do not

believe that the result here is so unfair as to render it absurd.

Further, "[w]hether or not constitutionally sound legislation is fair, wise, just, harsh, complete, adequate, inconvenient, mischievous, expedient, necessary, desirable, or good policy must be decided by the Legislature and not by the courts." *Pawson v. State*, 865 S.W.2d 36, 48 n. 6 (Tex.Crim.App.1993) (Clinton, J., concurring). Should the state legislature believe that the application of Article 11.07, § 4, leads to unacceptable inequities, it would be appropriate for the legislature to amend the statute. However, until the legislature makes such changes, we are bound by the statute as written and enacted.

I also note that the legislature has recently provided a method, outside of habeas corpus relief, for inmates to pursue claims of denial of time credits. Effective January 1, 2000, § 501.0081 of the Government Code requires inmates alleging erroneous time credits to pursue their claims through a dispute-resolution process within the prison system.[1] Tex. Gov't Code § 501.0081 (Vernon Supp.1999). An exception exists for inmates who are near their discharge date. In such circumstances the inmate may raise the time-credit claim in an application under Article 11.07, *if an application for a writ of habeas corpus is not otherwise barred.*

The legislature has not explicitly addressed the use of Article 11.07 to raise time-credit claims. The enactment of § 501.0081 provides an alternative avenue for inmates seeking time-credit relief, but it also perpetuates the time-credit inequity for applications filed before January 1, 2000, and for inmates near their discharge date, at a time when that inequity becomes most onerous. It is quite possible that, in enacting Article 11.07 and the new system for time-credit dispute resolution, the legislature was not cognizant of the inherent inequity as to the sequence of applications. If that is in fact the case, perhaps this case will assist the legislature in fashioning a remedy if it so desires.

With these comments, I join the opinion of the Court.

MEYERS, J., delivered this dissenting opinion on Rehearing.

What a difference a word makes. My reading of Code of Criminal Procedure article 11.07 § 4 differs from the majority's reading in the use of a single word. My interpretation is based on the legislature's choice of words used elsewhere in § 4 and is consistent with this Court's

---

1. Sec. 501.0081. Dispute Resolution: Time–Served Credits.

 (a) The department shall develop a system that allows resolution of a complaint by an inmate who alleges that time credited on the inmate's sentence is in error and does not accurately reflect the amount of time-served credit to which the inmate is entitled.

 (b) Except as otherwise provided by Subsection (c), an inmate may not in an application for a writ of habeas corpus under Article 11.07, Code of Criminal Procedure, raise as a claim a time-served credit error until:

 (1) the inmate receives a written decision issued by the highest authority provided for in the resolution system; or

 (2) if the inmate has not received a written decision described by Subsection (1), the 180th day after the date on which under the resolution system the inmate first alleges the time-served credit error.

 (c) Subsection (b) does not apply to an inmate who, according to the department's computations, is within 180 days of the inmate's presumptive parole date, date of release on mandatory supervision, or date of discharge. An inmate described by this subsection may raise a claim of time-served credit error by filing a complaint under the system described by Subsection (a) or, if an application for a writ of habeas corpus is not otherwise barred, by raising the claim in that application.

 This section applies only to a claim made on or after January 1, 2000, that alleges a time-served credit error, as described above. A claim made before January 1, 2000, that alleges a time-served credit error, as described above, is covered by the law in effect when the claim is made.

 Act of May 30, 1999, 76th Leg., R.S., ch. 1188, § 1.38, sec. 501.0081, 1999 Tex. Gen. Laws 4122, 4133 (Tex. Gov't Code § 501.0081) (Vernon Supp.1999).

reading of § 4 in *Ex parte Evans*, 964 S.W.2d 643 (Tex.Crim.App.1998). The majority's interpretation has no basis in § 4 and is at odds with *Evans*.

Section 4 provides in relevant part:

If a subsequent application for writ of habeas corpus is filed after final disposition of an initial application challenging the same conviction, a court may not consider the merits of or grant relief based on the subsequent application unless . . .

*Evans* addressed whether an initial application was a "challenge to the conviction" so as to bar a subsequent application.[1] The instant case raises the question of whether a subsequent application must also be a "challenge to the conviction" (as that phrase was defined in *Evans*) in order for the subsequent application to be barred under § 4.

The majority says the subsequent application need not "challenge" the conviction; it need only "regard" the conviction in order to be barred under § 4. The majority reads the following language into § 4:

If a subsequent application for writ of habeas corpus *regarding a conviction* is filed after final disposition of an initial application challenging the same conviction, a court may not consider the merits of or grant relief based on the subsequent application unless . . .

(Emphasis on language added). The majority modifies "a conviction" addressed in the subsequent application with a term of its own choosing ("regarding"), rather than the term used to modify "the same conviction" addressed in the initial application ("challenging"). It makes more sense that the two applications (initial and subsequent) relate to the "same conviction" *in the same way*. Thus, I read the following language into § 4:

If a subsequent application for writ of habeas corpus *challenging a conviction* is filed after final disposition of an initial application challenging the same conviction, a court may not consider the merits of or grant relief based on the subsequent application unless . . .

(Emphasis on language added). The legislature expressly provided that the initial application must "challeng[e] the . . . conviction." The legislature relied on its use of the word "same" to indicate that the two applications must relate to the "same convictions." Because the legislature did not provide for a term describing how the subsequent application must relate to the "same conviction" challenged by the initial application, it is most logical to assume the legislature intended that the subsequent application relate to the conviction in the same manner as the initial application— that is, it also must "challenge" the conviction. The majority reads into § 4 a strange if not wholly inappropriate word, but offers no explanation for why this term was selected over another term used elsewhere in the provision in connection with the same phrase to which the majority's term applies. This is contrary to statutory construction and good sense.

In addition, the majority's view that the two applications need not both "*challenge* the same convictions" under § 4 is contrary to our reading of § 4 in *Evans*, supra. Our stating of the issue presented in *Evans* reflects that we read § 4 to mean that both initial and subsequent applications "challenged" the same convictions:

[W]e must determine whether, under § 4, *Applicant's "initial application challeng[ed] the same conviction" as the instant application*, since the initial application pertained only the Applicant's parole revocation hearing.

1. In *Evans*, we noted that the term "conviction" had most often been construed to mean a judgment of guilt and assessment of punishment. Applying such interpretation in the context of § 4 "would exclude matters such as parole revocation from the ambit of § 4 because these types of claims do not question the validity of the prosecution or judgment." *Evans*, 964 S.W.2d at 647.

*Evans,* 964 S.W.2d at 646 (emphasis added). The plain language was obvious to the Court in *Evans.* While this aspect of § 4 was not the issue before the Court in *Evans* and the Court's reading in this regard does not therefore amount to a holding in that case, it nonetheless renders the majority's "plain language" reading of the provision today questionable.

We also said in *Evans* that our interpretation of the phrase "challenging the conviction"

would *exclude matters such as parole revocations from the ambit of § 4,* because a parole revocation does not call into question the validity of the prosecution or judgment; rather it questions issues arising after the completion of the prosecution.

*Id.* at 647 (emphasis added). This statement makes sense only if the phrase "challenging the conviction" applies to "subsequent application" as well as "initial application." If, as the majority holds, "challenging the conviction" only modifies "initial application," then *Evans* was far too broad in stating that our interpretation of "challenging the conviction" "would exclude matters such as parole revocations from the ambit of § 4." Under the majority's opinion, matters such as parole revocation are indeed subject to the ambit of § 4, if they are contained in a subsequent application. Only if they are contained in an initial application are matters such as parole revocation excluded from the ambit of § 4, says the majority.

I would hold that writ applications (initial or subsequent) which "challenge the conviction" as that phrase is defined in *Evans* are subject to § 4 and its procedural bar. Any writ applications which challenge matters that "do not call into question the validity of the prosecution or judgment" but pertain rather to "issues arising after the completion of the prosecution" are not subject to the "subsequent writ" bar of § 4. Applicant's subsequent application, pertaining to time credits for a

period of confinement that occurred subsequent to his conviction, is not a "challenge to the conviction" and therefore is not subject to § 4. I would address the merits of the claim.

The parole division affidavit reflects applicant was arrested on January 31, 1989, for violating parole. He was released on April 3, 1989, after completing a "program" at the "Bexar County Facility" and the warrant was withdrawn. Applicant's parole was later revoked on August 18, 1989, after applicant pled guilty to another burglary. The parole division affidavit shows applicant did not get credit for the period he was confined from January 31, 1989, to April 3, 1989. Applicant is entitled to relief on his sentence. *Ex parte Price,* 922 S.W.2d 957 (Tex.Crim.App. 1996).

For these reasons, I dissent.

MANSFIELD, J., delivered the dissenting opinion.

Because I believe the application at issue in the present case does not challenge applicant's conviction, I must respectfully dissent to the opinion of the majority dismissing this application pursuant to Texas Code of Criminal Procedure article 11.07, section 4(a). Furthermore, I believe that our recent opinion in *Ex parte Evans,* 964 S.W.2d 643 (Tex.Crim.App.1998), should not be overruled.

Article 11.07, section 4(a) expresses the Legislature's clear intent that, absent unusual circumstances,[1] a person may file only one application for habeas corpus relief which challenges the validity of a final conviction. In *Ex parte Torres,* we determined article 11.07, section 4(a) was intended to limit a convicted person to "one bite at the apple." *Ex parte Torres,* 943 S.W.2d 469, 474 (Tex.Crim.App.1997). Article 11.07, section 4(a), in my opinion, is the response by the Legislature to the formerly common practice of an inmate

---

1. See art. 11.07, §§ 4(a)(1), 4(a)(2), 4(a)(3).

filing an initial writ application claiming, for example, ineffective assistance of counsel and, if said initial writ is denied, filing subsequent "piece meal" writs attacking his conviction on various other grounds. Nothing in the legislative history of article 11.07, section 4 indicates the Legislature intended its provisions to apply to an application alleging improperly-denied jail time credit as such an application is not, in any way, an attack on the validity of the conviction.

In *Ex parte Evans,* we recognized that not every application for habeas relief is a "challenge to the conviction" under article 11.07, section 4. *Id.,* at 647. In *Ex parte Evans,* we held that applicant's initial application challenging his parole revocation did not challenge the validity of his conviction; accordingly, his second application, which did challenge the validity of his conviction, was not barred by article 11.07, section 4, and we proceeded to address its merits.

The situation in the present case is the reverse of that in *Ex parte Evans.* Here, the initial application clearly did challenge applicant's conviction; it is the subsequent application—the one at issue—that does not challenge applicant's conviction. I find it difficult to understand why a different result would ensue merely because of the order in which the applications were filed. Because Evans filed his application not challenging his conviction first, his second application challenging his conviction was not barred by article 11.07, section 4 from being addressed on its merits. In the present case, as applicant filed his application challenging his conviction first, his second application, which does not challenge his conviction, according to the majority, is barred by article 11.07, section 4 and thus must be addressed. Unless the majority expressly overrules *Ex parte Ev-*

*ans* (it appears to do so implicitly), it is difficult to reconcile the result here with that in *Evans.*

Furthermore, I must question, on *stare decisis* grounds, the wisdom of overruling *Ex parte Evans,* a holding less than two years old. The majority does not demonstrate, to my satisfaction, that *Ex parte Evans* has resulted in injustices or has been difficult for either the State or for applicants to follow.

Notwithstanding the propriety of the use of article 11.07 to address jail time credits in the first place,[2] doing so has become established practice and I cannot see any compelling reasons to "fix something that is not broken."

I respectfully dissent.

---

**2.** It may not be correct for claims concerning jail time credits to be addressed by filing an application for writ of habeas corpus. This is because a claim for jail time credits does not seek relief from a felony conviction or otherwise challenge a felony conviction. They would be better handled (as they now are) through administrative procedures established by TDCJ–ID. Otherwise, such claims would be best pursued by applying for mandamus relief.