IN THE COURT OF
CRIMINAL APPEALS

                                   OF
TEXAS

 

                                                                              

                                                                NO.
AP-75,370



 

 

                                  EX
PARTE CHARLES DEAN HOOD, Applicant

 

                                                                              



                          ON
APPLICATION FOR A WRIT OF HABEAS CORPUS

                                                      FROM
COLLIN COUNTY



 

 

Keller, P.J., delivered the opinion of the Court in which
MEYERS, PRICE, KEASLER, and HERVEY, JJ., joined.   COCHRAN, J., filed a
dissenting opinion in which WOMACK, JOHNSON, and HOLCOMB, JJ., joined.

 

 

This is applicant=s third
habeas application, and the claim he presents now was presented in neither of
the first two applications.  One of the questions before us is whether we are
barred from considering the merits of this application under statutory subsequent
application provisions.  We  conclude that we are barred from considering the
merits because the legal bases upon which applicant relies were available at
the time he filed his second application.  

                                                              I.
BACKGROUND








On September 7, 1990, applicant was convicted of
capital murder.  During the punishment phase of trial, he presented mitigating
evidence that he now contends was not adequately encompassed by the jury
instructions.  This included evidence that he was run over by a truck at the
age of three, that he received beatings during and after school (including a
blow to the head from a metal pipe), and that he suffered from speech defects
and learning disabilities.  Applicant=s trial occurred after the United States Supreme
Court handed down Penry I,[1]
but before the Texas Legislature added the mitigation special issue to Article
37.071.[2] 
In response to Penry I=s dictates, the trial court chose to use a Anullification@ instruction to enable the jury to give effect to
applicant=s mitigating evidence.  As in Smith,[3]
the submitted nullification instruction was a Aclear@ instruction, specifically requiring jurors to answer at least one of
the special issues Ano@ B even if Ayes@ answers to all the special issues had been
established beyond a reasonable doubt B if they believed that the defendant=s mitigating evidence justified a sentence of life rather than death. 
The jury answered all of the special issues Ayes,@ and, in accordance with the jury verdict, the trial court entered a
judgment sentencing applicant to death. 








We affirmed the trial court=s judgment on direct appeal.[4] 
In his brief on appeal, applicant raised a point of error complaining that the
trial court erred Ain failing to instruct the jury of a method to be
used by them to give effect to mitigating evidence.@[5]  He argued that the charge that was given failed to
satisfy Penry I=s requirements.[6] 
Although we found the point to be inadequately briefed, we nevertheless
proceeded to the merits.[7] 
After reviewing the jury charge, we concluded that the nullification
instruction Adid provide the jury with an adequate vehicle to
express and give effect to its >reasoned moral response=@ to applicant=s mitigating evidence.[8]

On December 22, 1997, applicant filed his first
application for writ of habeas corpus.  As originally filed, that application
included a challenge to the nullification instruction, but the application was
subsequently amended, and that particular claim was omitted.  We denied the
application on April 21, 1999.[9]









On June 4, 2001, the United States Supreme Court
decided Penry II, holding that the Aambiguous@ nullification instruction submitted in that case
failed to afford the jury an adequate vehicle by which to consider the
proffered mitigating evidence of mental retardation.[10] 
On April 21, 2004, this Court decided Ex parte Smith (Smith I),
which made two significant holdings: (1) adopting the Fifth Circuit=s Aconstitutional relevance@ threshold requirement, which called for a showing that Athe defendant=s criminal act was due to uniquely severe permanent
handicaps with which the defendant was burdened through no fault of his own,@ and (2) distinguishing the Aclear@ nullification instruction in Smith from the Aambiguous@ instruction found to be inadequate by the Supreme
Court in Penry II.[11]

On May 24, 2004, applicant filed, pro se, his
second habeas corpus application, which alleged that he was actually innocent
of the crime for which he was convicted.[12] 
We later dismissed that application as an abuse of the writ under Article
11.071, '5.[13]

On June 24, 2004, the Supreme Court decided Tennard
v. Dretke, discarding the Fifth Circuit=s Aconstitutional relevance@ threshold requirement.[14] 
On November 15, 2004, the Supreme Court reversed our decision in Smith I
with its decision in Smith II.[15] 
The Court overturned our first holding as inconsistent with Tennard, and
it overturned our second holding on the basis that the Aclear@ nullification instruction (and thus any
nullification instruction) was governed by its holding in Penry II.[16]








On June 22, 2005, eight days before his scheduled
execution, applicant filed a third habeas corpus application, along with a
motion for stay of execution.  That application is the one currently before us,
and it advanced a single claim for relief: AThe
nullification instruction in Mr. Hood=s case suffers from the same defects that the
Supreme Court found unconstitutional in Penry II and [Smith II].@  Applicant alleged compliance with the subsequent application
requirements of Article 11.071, '5, and we initially accepted that allegation B staying the execution and remanding the case to the trial court for
further proceedings.[17] 
After proceedings in the trial court, the record was returned to us, and we
ordered the parties to brief Athe merits of this issue in light of the entire
charge that the jury received, harm under Almanza v. State, 686 S.W.2d
157 (Tex.Crim.App. 1985) (op. on reh'g), and whether the issue should have been
raised in either the first or second applications.@[18]








With regard to the third question, applicant
contends that the Supreme Court=s repudiation in Tennard and Smith II
of the Fifth Circuit=s Aconstitutional relevance@ threshold requirement constitutes a new legal basis for his claim.  He
argues that this Court used the Fifth Circuit=s threshold
requirement as a screening test that prevented ever reaching the merits of a Penry
claim (whether based on Penry I alone or a combination of Penry I and
II).  He further argues that two of our unpublished dispositions evince a
recognition that Tennard and Smith II supplied a new legal basis
for reviewing a Penry II claim.  He points first to our unpublished
opinion in Robertson, which explicitly referenced Tennard and Smith
II, in concluding that the legal basis for his claim was unavailable at the
time his previous applications were filed.[19] 
Applicant points next to our unpublished, 2002 order in Ex parte Davis,
which dismissed a Penry II application as an abuse of the writ,[20]
as evidence of how this Court reacted to Penry II applications before Tennard
and Smith II were decided.

The State contends that applicant=s claim became available when Penry I was decided, and thus,
should have been presented in applicant=s first application.  The State points out that
applicant did present the claim initially in that application before
withdrawing it.  Alternatively, the State contends that the legal basis for
applicant=s claim became available when Penry II was
decided, and thus, should have been presented in applicant=s second application.  The State disputes applicant=s allegation that Tennard and Smith II afforded a new
legal basis for applicant=s claim.

                                                                  II.
ANALYSIS      

                                                      A.
Statutory Construction

In this case, determining whether the current claim
should have been raised in an earlier application requires that we construe the
capital habeas statute=s subsequent application provision,  Article 11.071,
'5.  When interpreting a statute, we follow our
cardinal rule of construction: we must give effect to the plain meaning of the
statutory text, unless the language is ambiguous or the plain meaning leads to
absurd results that the Legislature could not possibly have intended.[21] 
In determining the plain meaning of the text, we read words and phrases in
context and construe them in accordance  with Athe rules of
grammar and usage.@[22]  In addition, Awe generally presume that every word in a statute
has been used for a purpose and that each word, phrase, clause, and sentence
should be given effect if reasonably possible.@[23]













We must first determine whether we can address the Asubsequent application@ issue after remanding the case to the trial court
for further proceedings.  The capital habeas statute requires the trial court
to forward any subsequent application to this Court before taking any other
action with respect to that application so that this Court may determine
whether the subsequent application provisions have been met.[24] 
This Court is then required either to issue an order finding that the
requirements have been satisfied (in which event, the case is remanded to the
trial court for further proceedings) or to dismiss the application.[25] 
But the statute also provides that Aa court may not consider the merits of or grant
relief based on the subsequent application unless the application contains
sufficient specific facts establishing that@ one of three
statutory exceptions has been satisfied.[26] 
Plainly, we are a Acourt@ within the meaning of the statute, and thus, we are
not at liberty to ignore the legislative prohibition against considering the
merits of a claim that does not meet the subsequent application requirements. 
If we determine that those requirements are not met, we must dismiss the
application, even if we had previously remanded the claim on the basis of an
initial determination that the requirements had in fact been met.  We therefore
proceed to determine whether a relevant exception to the subsequent application
prohibition has been satisfied.               We need not concern ourselves
with two of those exceptions: applicant=s claim does not affect his guilt, so the Ainnocence gateway@ exception does not apply,[27]
and applicant=s claim, if accepted, would not establish that Ano rational juror would have answered in the State=s favor one or more of the special issues@ submitted to
the jury, even if we include, as one of those special issues,  the mitigation
special issue now required to be submitted by statute.[28] 
At best, applicant=s claim would establish that the jury might have
answered a special issue differently, not that it would have done so.

What remains is the Aunavailability
exception,@ which permits a subsequent application if: 

the current claims and issues have not been
and could not have been presented previously in a timely initial
application or in a previously considered application filed under this
article or Article 11.07 because the factual or legal basis for the claim was
unavailable on the date the applicant filed the previous application.[29]

 

This passage is marked by two adverbial
prepositional phrases, Ain a timely initial application@ and Ain a previously considered application,@ that are introduced by Anot@ and separated by Aor.@  This Anot . . . or@ phrasal structure is the equivalent of Anor,@ and indicates negation of both elements in the
series.[30] 
Consequently,  the exception requires that the claim in question be unavailable
not only for the first habeas application but also for any Apreviously considered application.@  













Because applicant=s second
application was dismissed as subsequent under '5, the
question arises whether an application so dismissed qualifies as a Apreviously considered application.@  The body of
'5(a) provides that Aa court may
not consider the merits or grant relief based on a subsequent
application.@[31]  Thus, a form of the word Aconsider@ appears both in the body of '5(a) setting forth the general prohibition and in the subsection (1)
exception to that prohibition, but in the former instance, the word  Aconsider@ is given a direct object, Athe merits,@ while in the latter instance, the word Aconsidered@ is not so modified.  Use of  Athe merits@ as a direct object for Aconsider@ indicates that the Legislature recognized there
were other types of Aconsideration,@ while the absence of that direct object in
subsection (1) indicates that the Legislature did indeed intend the word Aconsidered@ to have a broader meaning in that subsection.[32] 
If the statutory text were taken to be ambiguous on that count, however, the
clearly expressed intent in the legislative history to limit applicants to Aone bite at the apple@[33] supports the conclusion that an applicant must show
that a claim was unavailable even for applications that were dismissed under '5.[34]
Otherwise, once an initial application had been  filed and the time for that
initial filing had run, the statutory disincentive to filing piecemeal
litigation would dissipate.  As we have observed elsewhere, A[I]f [a] habeas petitioner has grounds which would justify granting
relief, he should present them with dispatch for determination, rather than
doling them out one‑by‑one in repeated attempts to have both the
benefits of relief and the fleeting pleasures of harassing those who confine
him.@[35]  Thus, to satisfy the exception, applicant=s claim must have been unavailable as to both of his previous
applications.          

As our quotation of the text shows, the statute
prescribes two different methods of demonstrating unavailability: (1) a new
factual basis and (2) a new legal basis.  We can quickly dispense with the
first method: the facts underlying applicant=s complaint
about the jury instruction were known at trial, and therefore, those facts were
necessarily available at the time the prior habeas applications were filed.[36]

The second method of demonstrating unavailability B a new legal basis B requires more explanation.  The Legislature
specifically defined what constitutes an unavailable legal basis under '5:  

For purposes of Subsection (a)(1), a legal basis of
a claim is unavailable on or before a date described by Subsection (a)(1) if
the legal basis was not recognized by or could not have been
reasonably formulated from a final decision of the United States Supreme Court,
a court of appeals of the United States, or a court of appellate
jurisdiction of this state on or before that date.[37]

 








Similar to the passage addressed above, this passage
contains a Anot . . . or@ phrase, here marked by a series of noun phrases (describing
the various types of courts) introduced by Anot@ and separated by Aor.@  Consequently, the structure of the statutory
provision requires that availability be negated for all the types of courts
listed.  For a legal basis to be unavailable, then, it must be true that no
decision from any of these types of courts makes the claim available (either by
explicit recognition or reasonable formulation). Stated another way, if the
legal basis for the claim was recognized by or could have been reasonably
formulated from a Supreme Court decision, any federal court of appeals
decision, or any state appellate court decision, then the applicant has failed
to meet the unavailability exception.  It is not enough, for example, for an
applicant to show that the legal basis could not have been derived from any
Texas state court decision if there existed a federal appellate decision from
which the legal basis could be derived.

Another point that deserves emphasis is that lack of
recognition is not enough to render a legal basis unavailable.  If the legal
basis could have been reasonably formulated from a decision issued by a
requisite court, then the exception is not met.

                     B. First Application -
Adequacy of the Nullification Instruction

Ultimately applicant=s claim is
grounded in Penry I.  It is Penry I that requires that the jury
be afforded an adequate vehicle for giving effect to mitigating evidence that
cannot otherwise be given effect through the statutory special issues.[38] 
But applicant=s claim is also grounded in Penry II and Smith
II because he contends, as he must, that the submitted nullification
instruction was not an adequate vehicle for that purpose.  Penry I did
not specifically address the acceptability of a nullification instruction, so
the legal basis for challenging that type of instruction was not Arecognized@ in Penry I.  The more difficult question,
however, is whether that legal basis could have been reasonably formulated from
Penry I or from other caselaw from the relevant jurisdictions.








We need not address that question in the abstract,
however, because we decided the acceptability of the nullification instruction
in applicant=s direct appeal.  It is axiomatic that issues raised
and rejected on direct appeal are generally not cognizable on habeas corpus.[39] 
An exception to that rule occurs when there is a change in a legal principle
relevant to the applicant=s claim, and that legal principle would apply
retroactively to cases on habeas corpus.[40]  
But when there has been no change, an applicant should not be expected to again
urge the exact same basis that we have already rejected.  In the language of
the statute, the legal basis for the claim Acould not
have been reasonably formulated@ at the time the habeas application was filed
because, on direct appeal, we had specifically rejected it, and no change in
the law had occurred with respect to the issue addressed.  Not only is this
interpretation supported by the language of the statute, but it serves judicial
economy and conforms to common sense: issues that can be litigated on direct
appeal, should be litigated there, and not re-litigated on habeas corpus.  The
same kind of reasoning applies when a claim is litigated in a prior habeas
application and the law has not changed with respect to that claim at the time
a subsequent application is filed.  After all, '5 bars claims
and issues that have been presented in an earlier application, not just
claims and issues that could have been presented.[41] 
If we decide an issue adversely to a defendant in a way that contradicts a
later legal development, that later legal development constitutes a legal basis
that was not presented and could not have been presented at the time.








            To summarize: a legal basis is
unavailable if it has been exhausted by previous presentation to this Court,
but that legal basis can become newly available as a result of later, binding
precedent relevant to the issue in question.  There are some important
distinctions between this Aunavailability by exhaustion@ doctrine and other situations that practitioners must keep in mind. 
First, a decision in someone else=s case cannot qualify as exhaustion.  Exhaustion is
based on cognizability, which depends on what the applicant has done to
advance his claims.  Also, a Achange in the law@ under the
exhaustion doctrine, rendering an issue newly cognizable (and thus Aavailable@), must come from a binding authority, i.e. cases
from this Court and the United States Supreme Court.  If a legal basis has been
exhausted, intermediate federal and state appellate court decisions cannot render
that legal basis newly cognizable.[42] 
As we have recognized above (and will discuss more below), however, the rule is
different for issues that are not exhausted. 

Applying the Aunavailability by exhaustion@ doctrine to applicant=s case, we find that applicant=s subsidiary claim regarding the efficacy of the nullification
instruction had already been exhausted at the time he filed his first
application.  We decided on the direct appeal of this case that the
nullification instruction was constitutionally adequate to give effect to any
mitigating evidence offered by the defendant.  Between the direct appeal and
the habeas application, no relevant change in the law occurred regarding that
issue.  Penry I had already been the law on direct appeal, and Penry
II (as well as Smith II) had not yet been decided.  We conclude that
the particular legal basis  being discussed here  B the inadequacy of the nullification instruction B was unavailable at the time applicant filed his first writ
application.  Therefore he was not required to rely on that legal basis in his
first application.  The next question is whether it was unavailable at the time
he filed his second application.      

                                                         C.
Second Application








                                      1. Adequacy
of the Nullification Instruction

Notably, applicant does not contend that Smith
II=s nullification holding constituted a legal basis
that was unavailable at the time he filed his second application, but we
address that issue nonetheless.  Obviously, Penry II was an available
legal basis with regard to the second application because Penry II
was decided nearly three years before the second application was filed.  The
question becomes whether Smith II=s
clarification of Penry II constitutes an unavailable legal basis upon
which applicant can now rely.  The only relevant distinction between the two
cases is that Penry II involved an ambiguous instruction while Smith involved
a clear nullification instruction.  While the Penry II Court did
criticize the instruction submitted in that case as ambiguous, some of the
Court=s discussion suggested that nullification
instructions might be inherently problematic:  

Here, however, it would have been both logically and
ethically impossible for a juror to follow both sets of instructions.  Because
Penry=s mitigating evidence did not fit within the scope
of the special issues, answering those issues in the manner prescribed on the
verdict form necessarily meant ignoring the command of the supplemental
instruction.  And answering the special issues in the mode prescribed by the
supplemental instruction necessarily meant ignoring the verdict form
instructions.  Indeed, jurors who wanted to answer one of the special issues
falsely to give effect to the mitigating evidence would have had to violate
their oath to render a true verdict.  The mechanism created by the supplemental
instruction thus inserted Aan element of capriciousness@ into the sentencing decision, Amaking the jurors= power to
avoid the death penalty dependent on their willingness@ to elevate the supplemental instruction over the verdict form
instructions.[43]

 








Although one could certainly argue (as we did in Smith
I) that a clear nullification instruction would present a distinguishable
situation, satisfying the Supreme Court=s cited ethical concerns by removing any doubt
regarding Awhich instruction should control over the other one,@[44] this passage in Penry II certainly afforded
the opportunity to Areasonably formulate@ a legal
argument for the proposition that any nullification instruction would be
inadequate.  In fact, the Supreme Court in Smith II specifically found
that Penry II had Aidentified a broad and intractable problem . . .
inherent in any requirement that the jury nullify special issues
contained within a verdict form.@[45]  And
because Penry II was a new legal development from a binding authority
that was relevant to the nullification claim applicant had advanced on direct
appeal, after Penry II, applicant=s nullification issue became cognizable on habeas
corpus, and thus Aavailable.@ 

Of course, we held in Smith I that Penry
II was distinguishable, rejecting a constitutional challenge to a Aclear@ nullification instruction.  But our holding in Smith
I could have no effect on federal precedent.  Under the plain language of '5, Penry II B a Supreme Court decision B continued to afford a basis for challenging any nullification
instruction.  As a general matter, that state of affairs could be
changed only by a decision of the United States Supreme Court.  








A particular applicant, however, could render the Penry
II legal basis unavailable by exhausting it.  That is, applicant
could have raised the Penry II claim in his second application, and if
that claim were rejected (on the merits or as a result of a '5 dismissal),[46]
applicant would then have been able to raise the claim in a subsequent
application after the Supreme Court=s decision in Smith II.[47] 
But applicant failed to do so, and thus, he cannot proffer Smith II=s holding on the nullification instruction as one that was previously
unavailable at the time he filed the second application. 

                                                      2.
Threshold Requirement








We turn finally to the allegation that the Supreme
Court=s decisions in Tennard and Smith II provided
a new legal basis for applicant=s claim by eliminating the threshold requirement
originally imposed by the Fifth Circuit and subsequently adopted by this
Court.  Although the Fifth Circuit had adhered to its threshold test for over a
decade,[48]
this test was never adopted in a Supreme Court opinion.  In the
meantime, Penry I stood as a Supreme Court decision from which an
applicant could Areasonably formulate@ the
contention that he was entitled to jury consideration of any type of
mitigating evidence.[49] 
The Supreme Court=s Tennard opinion recognized that a previous
(1990) decision addressing Athe relevance standard applicable to mitigating
evidence in capital cases . . . spoke in the most expansive terms.@[50]  In fact, the Supreme Court repudiated the Fifth
Circuit=s test as one that Ahas no basis
in our precedents and, indeed, is inconsistent with the standard we have
adopted for relevance in the capital sentencing context.@[51]  In similar,
strongly worded language, the Supreme Court in Smith II rejected the
Fifth Circuit=s approach (and ours) as Aa test we have never countenanced and now have unequivocally rejected.@[52]  The Supreme Court observed that its broad
interpretation of mitigating evidence was not new, having been Aplain under our precedents@ dating back to 1982.[53]

As we stated earlier, this Court=s decisions cannot affect the availability of legal bases articulated
in federal court opinions.  Regardless of our decision in Smith I, or in
our earlier cases, Penry I afforded a legal basis for contending that
the defendant=s mitigating evidence was constitutionally relevant
to determining whether he should receive the death penalty.  Applicant was not
required to raise that constitutional relevance issue in his first application
because our nullification holding on direct appeal necessarily rendered any Penry-based
claim non-cognizable.[54] 
But once that bar to cognizability was erased (by Penry II),
applicant was no longer excused from raising the issue.  Because we did not
resolve the constitutional relevance issue in applicant=s direct appeal, the issue had not been exhausted, and thus, applicant
was required to raise it in his second application.  He did not.   








Applicant=s reliance on our post-Penry II dismissal of
a habeas application in Davis, as evidence that he could not have raised
a Penry II claim earlier, is unavailing.  For starters, Davis was
an unpublished disposition, and as such, has no precedential value.  In any
event, as discussed above, dispositions by this Court, whether published or
unpublished, cannot render unavailable a legal basis made available by a
federal appellate decision except as to the particular applicant in question. 
Essentially, each applicant must Afight his own battles@ until the
Supreme Court decides to step in and clarify matters one way or the other.

Finally, we find unavailing applicant=s reliance on the remand in Robertson for the proposition that
he is advancing a previously unavailable claim.  As with Davis, Robertson
is an unpublished disposition, without precedential value.  Moreover, our
remand opinion in Robertson was handed down before we filed and set the
issues in the present case.  We had originally remanded the application in the
present case as well, but have since decided that the subsequent application
issue should be briefed and addressed.  Finally, Robertson is
distinguishable because the applicant in that case challenged the nullification
issue at every opportunity: on direct appeal,[55]
in his initial habeas application (filed in 1997), and in his second habeas
application, producing the remand opinion upon which applicant now relies.[56]

                                                                 D.
Conclusion  








Applicant was excused from presenting a Penry-type
claim in his first application because we held on his direct appeal that
the nullification instruction was adequate.  That holding was sufficient to
defeat a claim for relief, and binding precedent suggesting the incorrectness
of that holding (i.e. Penry II) did not yet exist.  But applicant was
not excused from presenting this claim  in his second application
because it was filed after Penry II, which afforded a new basis to
challenge our previous holding.  Smith II did not supply a previously
unavailable legal basis for challenging our original nullification holding
because that basis had already been supplied by Penry II, and, even
though applicant had the opportunity to litigate Penry II in his second
application, he did not do so and thus received no adverse ruling from this
Court holding Penry II inapplicable.  Further, the Supreme Court=s repudiation of the Fifth Circuit=s Aconstitutional relevance@ threshold requirement in Tennard and Smith II does not,
in the abstract, constitute a previously unavailable legal basis for relief
because, according to the Supreme Court itself, that basis could have been
reasonably formulated from the Supreme Court=s prior
decision in Penry I and other previously available Supreme Court
caselaw.  And finally, the  Tennard/Smith II constitutional relevance
holding has not been made unavailable by exhaustion because this Court has not
previously addressed the issue with respect to applicant and applicant had the
opportunity to raise the issue in his second application but failed to do so.  

Accordingly, we hold that the current application is
barred as a subsequent application under Article 11.071, '5.  The application is dismissed. 

Date
delivered: January 10, 2007

Publish        










[1]  Penry v. Lynaugh, 492 U.S. 302 (1989).





[2]  See Acts 1991, 72nd Leg., ch.
652, '9 (adding mitigation special issue).  All references
to articles refer to the Texas Code of Criminal Procedure.





[3]  See Ex parte Smith, 132 S.W.3d 407, 416
(Tex. Crim. App. 2004); Smith v. Texas, 543 U.S. 37, 46-48 (2004).





[4]  See Hood v. State, No. 71,167 (Tex. Crim.
App., Nov. 24, 1993)(not designated for publication).





[5]  Id., slip op. at 18 (quoting applicant=s brief).





[6]  Hood, slip op. at 18-19.





[7]  Id. at 19.





[8]  Id. at 20 (emphasis in original).





[9]  Ex parte Hood, No. 41,168-01 (Tex. Crim.
App., Apr. 21, 1999)(not designated for publication).





[10]  Penry v. Johnson, 532 U.S. 782 (2001).





[11]  Ex parte Smith, 132 S.W.3d 407, 413-416,
416-417 (Tex. Crim. App.), rev=d sub. nom.,
Smith v. Texas, 543 U.S. 37 (2004)(internal quotation marks omitted).  





[12]  In this second application, applicant indicated
that he was being represented by counsel in federal court and with respect to
state DNA proceedings but that counsel had refused to file a subsequent state
application raising the actual innocence claim.





[13]  Ex parte Hood, No. WR‑41,168‑02
(Tex. Crim. App., Apr. 13, 2005)(not designated for publication).





[14]  542 U.S. 274 (2004).





[15]  Smith v. Texas, 543 U.S. 37 (2004).





[16]  Smith II, supra.





[17]  Ex parte Hood, No. WR‑41,168‑03
(Tex. Crim. App., Jun. 27, 2005)(not designated for publication).





[18]  Ex parte Hood, No. WR‑41,168‑03
(Tex. Crim. App., Apr. 5, 2006)(not designated for publication).





[19]  See Ex parte Robertson, No. AP-74,720 (Tex.
Crim. App., Mar. 16, 2005).





[20]  See Ex parte Davis, No. WR-40,339-03 (Tex.
Crim. App., Apr. 29, 2002).





[21]  Boykin v. State, 818 S.W.2d 782, 785 (Tex.
Crim. App. 1991).





[22]  Sanchez v. State, 995 S.W.2d 677, 683 (Tex.
Crim. App. 1999); Tex. Gov=t Code '311.011(a).





[23]  Whitelaw v. State, 29 S.W.3d 129, 131 (Tex.
Crim. App. 2000).





[24]  Art. 11.071, '5(c).





[25]  Id.





[26]  Art. 11.071, '5(a).





[27]  See Art. 11.071, '5(a)(2).





[28]  See Art. 11.071, '5(a)(3).





[29]  Art. 11.071, '5(a)(1)(emphasis added).





[30]  See The
American Heritage Book of English Usage, pt. 1 (Grammar), '40 (nor) (1996).  





[31]  Art. 11.071, '5(a)(emphasis added).





[32]  See Ex parte Whiteside, 12 S.W.3d 819, 821
(Tex. Crim. App. 2000)(AThe Legislature modified >initial application= with the phrase >challenging
the same conviction= but did not so modify >subsequent application.= The lack of any language modifying >subsequent application= plainly indicates the Legislature=s intent that >subsequent applications= include all subsequent habeas corpus applications regarding the
same conviction, rather than only those that >challenge= the conviction.@)(emphasis in original).





[33]  Ex parte Torres, 943 S.W.2d 469, 474 (Tex.
Crim. App. 1997)(discussing legislative history common to the subsequent
application provisions in both Arts. 11.07 and 11.071).





[34]  Whiteside, 12 S.W.3d at 821 (AInterpreting >subsequent applications= under ' 4 to include all applications for writs of habeas
corpus regarding the same conviction would most effectively achieve the
Legislature's objective.@).





[35]  Ex parte Kerr, 64 S.W.3d 414, 418 n. 11
(Tex. Crim. App. 2002)(citing Ex parte Carr, 511 S.W.2d 523, 525 (Tex.
Crim. App. 1974)).





[36]  Ex parte Sowell, 956 S.W.2d 39, 40 (Tex.
Crim. App. 1997)(trial court=s statement that the defendant could not appeal did
not constitute a new factual basis because it occurred at trial).





[37]  Art. 11.071, '5(d)(emphasis added).





[38]  See Penry I, supra.





[39]  Ex parte McFarland, 163 S.W.3d 743, 748
(Tex. Crim. App. 2005).





[40]  Id.; Ex parte Drake, 883 S.W.2d 213,
215 (Tex. Crim. App. 1994).





[41]  Art. 11.071, '5(a)(1)(Athe current claims and issues have not been and
could not have been presented previously@).





[42]  Non-cognizability due to exhaustion is an entirely
different situation from non-cognizability due to a failure to exhaust.  That
is, the failure to raise on appeal an issue that should have been raised would
render the issue non-cognizable on habeas corpus, but such a failure itself
implicates questions of procedural default, and is not a matter addressed in
the present opinion.  See Ex parte Gardner, 959 S.W.2d 189, 198-199
(Tex. Crim. App. 1998)(op. on reh=g). 





[43]  Penry II, 532 U.S. at 799-800 (citation
omitted).





[44]  Smith I, 132 S.W.3d at 416.





[45]  Smith, 543 U.S. at 46 (emphasis added).





[46]  See Ex parte Staley, 160 S.W.3d 56, 63-64
(Tex. Crim. App. 2005)(claim can be dismissed under '5 if Court determines, substantively, that defendant=s allegations do not fall within the umbrella of the new legal claim).





[47]  In fact, had applicant raised the nullification
claim in his second application, he would likely have received consideration in
that application since we disposed of his application after Smith II
had been decided.





[48]  See Smith, 132 S.W.2d at 413, 413 n. 19
(citing Graham v. Collins, 950 F.2d 1009, 1029 (5th Cir.
1992)(en banc), aff=d, 506
U.S. 461 (1993)).





[49]  Penry I, 492 U.S. at 315 (special issues
should be Ainterpreted broadly enough to permit the sentencer
to consider all of the relevant mitigating evidence a defendant might present
in imposing sentence,@ citing Jurek v. Texas, 428 U.S. 262 (1976)),
317 (sentencer Ashould not be precluded from considering, as a
mitigating factor, any aspect of a defendant=s character
or record and any of the circumstances of the offense that the defendant
proffers as a basis for a sentence less than death,@ citing plurality opinion in  Lockett v. Ohio, 438 U.S. 586
(1978)), 318 (sentencer may not be precluded from considering Aany relevant mitigating evidence offered by the defendant as the basis
for a sentence less than death,@ citing Eddings v. Oklahoma, 455 U.S. 104
(1982)).





[50]  542 U.S. at 284 (citing McKoy v. North Carolina,
494 U.S> 433, 440-441 (1990)).





[51]  Id.





[52]  543 U.S. at 45.





[53]  Id. (citing Penry I, Payne v.
Tennessee, 501 U.S. 808, 822 (1991), Boyde v. California, 494 U.S.
370, 377-378 (1990), and Eddings (1982)).





[54]  See Staley, cited above (applicant=s claim must fall within umbrella of new legal theory to warrant
consideration).





[55]  Robertson v. State, 871 S.W.2d 701, 710-711
(Tex. Crim. App. 1993), cert. denied, 513 U.S. 853 (1994).





[56]  See Robertson, No. AP-74,720.  After Robertson,
we remanded a sixth habeas application filed by Davis, which presented a Penry
II nullification claim.  Ex parte Davis, No. WR-40,339-06 (Mar. 29,
2006)(not designated for publication).  As in Robertson, we cited Tennard
and Smith II.  See Davis, No. WR-40,339-06.  The Davis
remand order also occurred before we filed and set the issues in the present
case, and Davis=s situation contains two significant distinguishing
factors: (1) he did not raise any sort of Penry claim on direct
appeal, see Davis v. State, 961 S.W.2d 156 (Tex. Crim. App. 1998), and
(2) he did raise a Penry II claim in his first post-Penry II application
(his third application).  We express no opinion at this juncture on whether
Davis=s claims are properly before us.