

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. WR-77,940-02

### EX PARTE TOMAS RAUL GALLO, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS IN CAUSE NO. 940093-B FROM THE 182ND DISTRICT COURT OF HARRIS COUNTY

**PRICE, J., delivered the unanimous opinion for the Court.**

### O P I N I O N

We have before us a subsequent post-conviction application for writ of habeas corpus brought pursuant to Article 11.071 of the Texas Code of Criminal Procedure.[1] The applicant challenges the constitutionality of his death sentence, specifically arguing that the jury's answer to the special issue submitted to it at the punishment phase of his capital-murder trial with respect to whether he is mentally retarded was corrupted by false testimony of a State's

---

[1] TEX. CODE CRIM. PROC. art. 11.071.

expert, Dr. George Denkowski.[2] We will dismiss this subsequent application, but without prejudice to the applicant to submit another subsequent writ application later (so long as that later subsequent writ application satisfies the requisites of Article 11.071, Section 5, for a subsequent capital writ application).

This Court affirmed the applicant's original conviction for capital murder and death sentence on direct appeal on September 26, 2007.[3] We denied relief on his initial post-conviction application for writ of habeas corpus on January 9, 2013.[4] On April 22, 2013, the same attorney appointed to represent the applicant in his original habeas corpus proceedings, Jerome Godinich, Jr.,[5] filed a subsequent application for writ of habeas corpus on the applicant's behalf—the pleading that is before us in the instant case. However, between this Court's denial of the applicant's initial writ application on January 9, 2013, and Godinich's filing of a subsequent state writ application on the applicant's behalf on April 22, 2013, a different attorney, A. Richard Ellis, was appointed to represent the applicant in federal

---

[2]
    *See Ex parte Gallo*, No. WR-77,940-01, 2013 WL 105277 (Tex. Crim. App. delivered Jan. 9, 2013) (not designated for publication).

[3]
    *Gallo v. State*, 239 S.W.3d 757 (Tex. Crim. App. 2007).

[4]
    *Ex parte Gallo*, *supra*.

[5]
    Godinich did not prepare the applicant's initial writ application, but was appointed on January 28, 2009, to continue representing the applicant during the initial state habeas proceedings when the applicant's originally appointed initial state habeas attorneys withdrew from the case after accepting employment with the Harris County District Attorney's Office. Godinich did prepare the instant subsequent writ application, with the assistance of another attorney, R. Scott Shearer.

habeas corpus proceedings to be brought under 28 U.S.C. Section 2254.[6]  Shortly after he

was appointed to represent the applicant in federal court proceedings, Ellis filed a notice of

appearance in this case and a motion to strike the subsequent post-conviction application for

writ of habeas corpus that Godinich had filed, claiming that Godinich had filed it without the

applicant's permission and against the applicant's will.[7]  Without further ado, the convicting

court forwarded the subsequent state post-conviction writ application to this Court, as

required by statute.[8]  On June 26, 2013, this Court remanded the subsequent writ application

to the convicting court for additional fact development and recommended findings with

respect to how we should proceed with the subsequent writ application that Godinich filed

on the applicant's behalf.[9]  With the benefit of that additional fact development and

---

[6]

See TEX. CODE CRIM. PROC. art. 11.071, § 2(e) (requiring the appointed attorney in the initial state writ application, upon this Court's denial of relief on that application, to file a motion in federal court for the appointment of counsel under 18 U.S.C. Section 3599 for purposes of federal habeas corpus proceedings).  Ellis was appointed on January 25, 2013.

[7]

Ellis attached an inmate declaration from the applicant himself in which the applicant asserts that he was "upset" upon learning that Godinich had filed a subsequent application in his case and that "I have never consented to it being filed and I do not want it filed by" Godinich.  In addition, the applicant insisted that he did not even know who Shearer was, much less had he ever consented to Shearer filing a subsequent writ application for him.  We note that the applicant executed this declaration on May 21, 2013, but that it does not altogether conform to the form prescribed since September 1, 2011, by Section 132.001(c) of the Texas Practice and Remedies Code.  See TEX. PRAC. & REM. CODE § 132.001(e), as amended by Acts, 82nd Leg., ch. 847, § 1, pp. 2119-20, eff. Sept. 1, 2011.

[8]

See TEX. CODE CRIM. PROC. art. 11.071, §§ 5(b), (c).

[9]

Ex parte Gallo, No. 77,940-02, 2013 WL 3251436 (Tex. Crim. App. June 26, 2013) (not

recommendations from the convicting court, the case is back before us now and we have filed and set the cause in order to decide whether to allow Godinich to proceed with this subsequent writ application on the applicant's behalf.

In response to our remand, the convicting court entered recommended findings of fact and conclusions of law. Noting that the applicant "advanced a claim of mental retardation during his trial in this court[,]" the convicting court has recommended that we find "that it is Attorney Godinich's duty to continue representing [the applicant] until and unless relieved of his duties by this Court or another court possessing jurisdiction." Citing *Indiana v. Edwards*,[10] the convicting court recommended that we hold that it had "the authority to appoint counsel and to insist upon representation by appointed counsel for those who may suffer from severe mental illness to the point where they are not competent to conduct proceedings by themselves."[11] On these premises, the convicting court recommended that we conclude that the applicant's "subsequent state writ was filed appropriately by duly appointed counsel . . . Godinich . . . and should, therefore proceed to litigation." For a number of reasons, we reject these recommended findings and conclusions.

First and foremost, we disagree that Godinich's duty to represent the applicant

---

designated for publication).

[10] 554 U.S. 164 (2008).

[11] There is no indication in the record before us that the convicting court ever specifically appointed Godinich to represent the applicant in a subsequent post-conviction writ application.

extended beyond the point at which, following this Court's denial of state habeas relief, he satisfied his duty to file a motion in federal court "for the appointment of counsel in federal habeas review" under federal appointment provisions.[12] Article 11.071 has never contemplated that initial state habeas counsel has a *duty* to continue representing his death-row client beyond this point. And indeed, since 2011, Sections 6(b-1) and 6(b-2) of Article 11.071 clearly evince the contrary proposition.[13] These provisions require the convicting court, upon receiving notice from this Court that a subsequent post-conviction habeas application will be allowed to proceed under Section 5 of Article 11.071, to formally appoint and compensate counsel for the indigent death-row inmate.[14] They would be utterly redundant under a statutory scheme that already imposed a continuing duty on court-appointed initial state habeas counsel to represent his death-row client even after the initial writ application was finally disposed of.[15] Godinich filed the applicant's subsequent writ

---

[12] See TEX. CODE CRIM. PROC. art. 11.071, § 2(e) (providing that initial state habeas counsel must file the motion for the appointment of federal habeas counsel no later than fifteen days after this Court denies relief without opinion, or within fifteen days of the issuance of our mandate in the event that we file and set the case and issue a formal opinion denying relief).

[13] See Acts 2011, 82nd Leg., ch. 1139, § 1, p. 2941, eff. Sept. 1, 2011 (adding Subsections (b-1) and (b-2) to Section 6 of Article 11.071).

[14] TEX. CODE CRIM. PROC. art. 11.071, §§ 6(b-1), 6(b-2).

[15] E.g., Garza v. State, 213 S.W.3d 338, 349 (Tex. Crim. App. 2007) ("We must presume that 'in enacting a statute, the Legislature intends the entire statute to be effective[,]' and did not intend a useless thing.") (quoting Heckert v. State, 612 S.W.2d 549, 552 (Tex. Crim. App. 1981)).

application on April 22, 2013, well after the effective date of Article 11.071, Sections 6(b-1)

and 6(b-2).[16]  At that point in time, he had *not* been appointed by the court to represent the

applicant in a *subsequent* application for writ of habeas corpus.  And while it may certainly

have been acceptable for Godinich to file such a subsequent writ application on a *pro bono*

basis (as with any subsequent writ application in a death penalty case filed by an attorney

under the statutory scheme—unless and until this Court should grant the convicting court

permission to proceed under Article 11.071, Section 5, thus triggering the appointment-and-

compensation mechanisms of Sections 6(b-1) and 6(b-2)), he may not do so against the

express will, and without the permission, of the applicant himself.

It is certainly true that a post-conviction application for writ of habeas corpus need not

be "presented" by the applicant himself.[17]  But the "other person" who "may sign[] and

present[]" the habeas petition on the applicant's behalf must at least have the applicant's

informed consent to do so.[18]  Otherwise, it cannot be said that the "other person" is genuinely

---

[16]

*See* Acts 2011, 82nd Leg., ch. 1139, § 2, p. 2941, eff. Sept. 1, 2011 (providing that the change in law applies to all subsequent writ applications filed after its effective date, and that the prior law, which did not *mandate* court-appointed counsel, still applies for subsequent writ applications filed before that date).

[17]

*Ex parte Rendon*, 326 S.W.3d 221, 224 (Tex. Crim. App. 2010);  TEX. CODE CRIM. PROC. art. 11.12.

[18]

TEX. CODE CRIM. PROC. art. 11.13.

presenting the habeas petition "for him."[19]   The word "for" can mean "in place of" or "in behalf of," but it may also simply mean, "as regards."[20] Given the potential abuse-of-the-writ consequences of having some "other person" present an applicant's post-conviction writ application "for him," we are not inclined to interpret "for him" in Article 11.12 merely to mean "as regards" him.[21]   And before it can be said that the "other person" presents an application "in place of" or "in behalf of" the applicant, that "other person" should have the applicant's approval.

In his affidavit on remand, Godinich has opined that the applicant "is not of sufficiently sound mind to understand" Ellis's ministrations—the suggestion being that the applicant lacks the capacity to make a rational decision to forego Godinich's services on his behalf in this subsequent writ application.   Perhaps this consideration underlies the convicting court's recommendation that subsequent writ counsel should continue to represent the applicant, since the applicant "may" be one of those who "suffer from severe mental illness to the point where they are not competent to conduct proceedings by themselves." There is no suggestion in the record before us that the applicant is mentally *ill*, however, or that his mental retardation, if any, is so debilitating as to render him incapable of rationally

---

[19]   *Id*. arts. 11.12, 11.13.

[20]    WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 886 (2002).

[21]   TEX. CODE CRIM. PROC. arts. 11.07, § 4; 11.071, § 5; 11.072, § 9.

choosing, upon Ellis's advice, to reject Godinich's (however well-intentioned) attempts on his behalf. Godinich has not requested, and the convicting court has failed to conduct, any proceeding designed to expose any incompetency on the applicant's part. Nor did the convicting court enter an order actually appointing Godinich to prepare and file a subsequent writ application on the applicant's behalf.[22] On the current state of the record, we find the holding of *Indiana v. Edwards*, upon which the convicting court based its recommendation, to be entirely inapposite.[23]

---

[22] On its face, Article 11.071 neither expressly authorizes nor expressly prohibits the appointment of counsel by the convicting court for the initial *preparation* of a subsequent application for writ of habeas corpus in a capital case. Most notably, it nowhere authorizes the county to obtain reimbursement from the State for the appointment of an attorney for purposes of *preparing* a subsequent application—at least not unless and until the subsequent writ application has been filed and this Court has authorized the convicting court to proceed, after which the county may be reimbursed by the State even for the *preparation* of the subsequent application. TEX. CODE CRIM. PROC. art. 11.071, § 6(b-2).

[23] The issue in *Edwards* was whether a state may force appointed counsel upon a mentally ill defendant for purposes of trial without violating his Sixth Amendment right to represent himself under *Faretta v. California*, 422 U.S. 806 (1975). The more apt question for present purposes is whether post-conviction habeas applicants have a Sixth Amendment right to self-representation to begin with, much less whether that right may be abrogated on account of mental incapacity. *See Martinez v. Court of Appeal of California, Fourth Appellate District*, 528 U.S. 152 (2000) (no Sixth Amendment right to self-representation on direct appeal). Still, Article 11.071 permits all capital habeas applicants in Texas to proceed *pro se*. *See* TEX. CODE CRIM. PROC. art. 11.071, §§ 2(a), 6(b-1) (permitting *pro se* representation for both initial and subsequent writs, respectively). We may one day be confronted with the question of whether a convicting court may force an incompetent habeas applicant, who nevertheless insists upon his statutory right to proceed *pro se*, to accept appointed counsel. But that is not the scenario before us today. The applicant here is not insisting on representing *himself* for purposes of this subsequent application for writ of habeas corpus. He simply does not want such an application to be filed on his behalf *at all*—at least not at the present time, and certainly not by Godinich. Whatever right the applicant may have to represent himself, constitutional or statutory, is not implicated in this case.

The applicant currently has the benefit of court-appointed counsel, albeit only for the federal habeas corpus proceedings. As long as Ellis remains the applicant's appointed federal habeas attorney, he has an obligation to continue to represent the applicant all the way through the state executive clemency process.[24] After conducting his federal investigation, Ellis would presumably be in a better position to gauge *all* of the potential claims for inclusion in a first subsequent writ application under Section 5 of Article 11.071, and thereby at least minimize the risk of *additional* procedural default by the failure to include reasonably available claims in the applicant's *first* subsequent (-02) writ application that could bar him from raising them successfully in any *subsequent* subsequent (-03 or -04) writ application.[25] This is the risk that Godinich runs in filing the present writ application, based as it is upon

---

[24] *See Harbison v. Bell*, 556 U.S. 180, 193 (2009) (construing language in the federal court appointment statute, 18 U.S.C. § 3599(e), to "authorize" federally appointed habeas counsel in state capital cases to represent (and be compensated for representing) their federal habeas clients in final state clemency petitions, while observing that "Congress likely appreciated that federal habeas counsel are well positioned to represent their clients in state clemency proceedings that typically follow the conclusion of [28 U.S.C.] § 2254 litigation").

[25] *See* TEX. CODE CRIM. PROC. art. 11.071, § 5(a)(1) ("If a subsequent application for writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that . . . the current claims and issues have not been and could not have been presented . . . in a previously considered application filed under this article . . . because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application[.]"); *Ex parte Hood*, 211 S.W.3d 767, 774-75 (Tex. Crim. App. 2007) (to be available for review on the merits under Article 11.071, Section 5(a)(1), a claim must have been unavailable for purposes of any previously considered writ application, including those that were dismissed as an abuse of the writ under Section 5); *Ex parte Whiteside*, 12 S.W.3d 819, 821 (Tex. Crim. App. 2000) (construing Article 11.07, Section 4(a)(1), similarly).

but a single issue that he would have the applicant pursue without the benefit of the product of Ellis's federal habeas investigation. Godinich's present subsequent writ application may well interfere with Ellis's later, better-informed efforts on the applicant's behalf. Given these considerations, it is little wonder that the applicant does not wish to have Godinich file a subsequent writ application at the present time. We must respect that wish.

For these reasons, we dismiss the subsequent writ application that Godinich has filed, but without prejudice to the applicant to later file a subsequent writ application that will be evaluated for abuse-of-the-writ purposes, under Section 5 of Article 11.071, as if it were the applicant's *first* subsequent writ application.

DELIVERED:    November 19, 2014
PUBLISH