

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NOS. WR-11,312-01 & WR-11,312-04

## EX PARTE RAYMOND GEORGE RILES, Applicant

## ON APPLICATIONS FOR WRITS OF HABEAS CORPUS
## FROM CAUSE NO. 224779 IN THE 179th CRIMINAL DISTRICT COURT
## HARRIS COUNTY

SLAUGHTER, J., filed a dissenting opinion in which RICHARDSON and YEARY, JJ., joined.

## DISSENTING OPINION

Autonomy is a fundamental right that should be afforded to everyone. Our Constitution was designed to protect autonomy. But there are some instances when a person does not have the mental capacity to make the best decisions for himself. Civil law addresses these matters with guardianships; allowing someone to act in the best interest of the intellectually-disabled person under the supervision of a court. Such supervision by the court helps to ensure that the guardian is, in fact, acting in the best interest of the individual.

Unfortunately, such protections are not always afforded under criminal law for incarcerated individuals. This case highlights such a situation.

For more than forty years, Applicant Raymond George Riles has been incarcerated under a sentence of death for a capital murder he committed in 1974. During that time, he has been examined by mental-health professionals on numerous occasions and has been consistently found incompetent to be executed because of his severe mental illness. Habeas counsel has now filed the instant application for a writ of habeas corpus seeking a new punishment trial on Applicant's behalf. Counsel claims that Applicant was sentenced under a pre-*Penry* sentencing scheme that was constitutionally inadequate because it did not allow jurors the opportunity to give mitigating effect to the extensive evidence of Riles' mental illness presented at trial.[1] The Court grants this relief, and I agree that Applicant's position is meritorious. But the Court grants relief without knowing whether Riles had the capacity to consent to habeas counsel's representation, whether Riles had a legal guardian or someone acting under a power of attorney who could consent to such representation, or whether habeas counsel took it upon himself to address what he believed was a legal injustice but which may not be in Riles' best interest.

According to the instant application, Applicant has been evaluated during his decades on death row by at least four mental-health experts on numerous occasions. The application contains as exhibits five psychiatric evaluations dated 1988, 1991, 1993 (two

---

[1] *See Penry v. Lynaugh*, 492 U.S. 302 (1989) (holding that new punishment trial was warranted where jury instructions failed to provide jury with adequate vehicle for considering and giving effect to capital defendant's mitigating evidence).

reports), and 2005. Following each of these evaluations, Applicant was adjudged incompetent to be executed because of his severe mental illness. According to the doctors who examined him, Applicant "does not appear to have sufficient capacity to understand the criminal justice system;" suffers from a "thought disorder or some other process that significantly distorts his perception of reality;" has "bizarre and delusional interpretations of his current legal situation;" and is "grossly psychotic."[2] Although the record does not contain any formal evaluation of Applicant's mental state since 2005, this Court has received information informally from TDCJ since that time suggesting that Applicant remains incompetent to be executed.

The standard for competency to be executed is whether a person understands that he is to be executed, that the execution is imminent, and the reason he is being executed. TEX. CODE CRIM. PROC. Art. 46.05(h). This is a very low standard for competency, but nonetheless one that Applicant has failed to meet. When an individual suffers from a mental illness so severe that he is rendered incompetent to be executed, this, by definition, calls into question whether he has the capacity to consent to legal representation and the filing of litigation on his behalf. *See* Comment 12 to Rule 1.02 of the Texas Rules of Professional Conduct (stating that attorney-client relationship is established by: (1) "consenting adults who possess the legal capacity to agree to the relationship;" or (2) "legally effective appointment of a lawyer to represent a person;" "unless the lawyer is legally authorized to act for a person under a disability, an attorney-client relationship does not exist for the

---

[2] *See* Writ Application, Exhibits C-G.

purpose of this rule."). Here, apart from the conclusory verification that counsel is authorized to represent Applicant,[3] the application presents no evidence that counsel has been legally authorized to act on Applicant's behalf or that Applicant is even aware that this application has been filed. An attorney filing a post-conviction writ application on an Applicant's behalf "must at least have the applicant's informed consent to do so." *Ex parte Gallo*, 448 S.W.3d 1, 4 (Tex. Crim. App. 2014) (dismissing subsequent writ filed by attorney against Applicant's express wishes);[4] *see also* ABA Model Rules Prof'l Conduct 1.0(e) ("'Informed consent' denotes the agreement by a person to a proposed course of

---

[3] The verification for the application states that counsel is an "authorized attorney for Raymond Riles, having the authority to prepare and to verify Raymond Riles's Application for Post-Conviction Writ of Habeas Corpus." Aside from this conclusory assertion, the application does not otherwise address how counsel obtained Applicant's consent to file this litigation on his behalf.

[4] In *Gallo*, this Court considered a subsequent Article 11.071 application that had been filed by an attorney without the applicant's permission and against the applicant's will, and we ultimately dismissed the application under those circumstances as an unauthorized filing. 448 S.W.3d at 2, 6. There, the attorney who filed the subsequent application had previously represented the applicant in his initial Article 11.071 proceedings, but since that time, the applicant was appointed new habeas counsel for purposes of pursuing federal habeas relief. *Id.* at 2. According to an inmate declaration filed in the habeas court after the filing of the subsequent application, the applicant "never consented to [the subsequent application] being filed and [did] not want it filed by" initial state habeas counsel. *Id.* at 2 n.7. In explaining our conclusion that the filing was improper and subject to dismissal, we examined the language in Code of Criminal Procedure Articles 11.12 and 11.13 and held that another person who signs and presents a habeas application on the applicant's behalf must "at least have the applicant's informed consent to do so. Otherwise, it cannot be said that the 'other person' is genuinely presenting the habeas petition 'for him.'" *Id.* at 4; *see also* TEX. CODE CRIM. PROC. arts. 11.12 ("Either the party for whose relief the writ is intended, or any person for him, may present a petition to the proper authority for the purpose of obtaining relief."); 11.13 ("The word applicant, as used in this Chapter, refers to the person for whose relief the writ is asked, though the petition may be signed and presented by any other person."). Thus, this Court has interpreted the pertinent provisions in Chapter 11 of the Code as requiring the applicant's permission before litigation may be filed on his behalf, and it has further held that the proper course in the event of an unauthorized filing is dismissal of the application without prejudice. *Gallo* supports the notion that this subsequent habeas application should not be considered if it is not supported by informed consent or some equivalent type of authorization obtained through the assistance of a legal guardian.

conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct."). While I recognize that mentally incompetent applicants deserve zealous representation and it seems unfair if they are unable to obtain such representation because they lack the capacity to give informed consent, it nevertheless is highly improper and potentially violative of personal autonomy to permit litigation to proceed when it is unclear whether an applicant has any awareness whatsoever of the filing or of its possible consequences. And the possible consequences here are significant.

The Court's decision to grant relief on the instant application will result in Riles being taken off death row. In the ordinary case, such an outcome would be considered universally positive for an applicant. But for Riles, it means he will be transferred into the custody of the Harris County Jail, where he will await a new punishment hearing. Based on Riles' history of incompetence, before the trial court can conduct a new punishment hearing, it will need to possibly appoint new counsel (unless habeas counsel is planning to continue representing Riles in the trial court) and will need to order a competency evaluation to determine whether Riles is competent to stand trial. Given Riles' mental health history, he will likely again be held incompetent. Such an incompetence finding will result in Riles' transfer to a state hospital in an attempt to restore his competency. If Riles' competency is restored for purposes of a punishment-only retrial—a possibility that seems unlikely given the circumstances—at best, he will receive a life sentence with the

possibility of parole.[5] If he receives a life sentence with parole, given the length of his time served in prison already, he would be eligible for parole. If he is released on parole, his mental illness could result in homelessness and/or joblessness. Applicant would almost certainly have access to fewer mental healthcare resources than he does in TDCJ. Even if he is unable to get parole, Riles faces the distinct possibility of being sent back and forth between Harris County Jail, a state hospital, and TDCJ. If, instead, Riles were to remain on death row, based on his longtime severe mental illness, his mental incompetence would likely prevent him from ever being executed. Thus, the disruptive effects of granting Applicant relief may far outweigh any possible benefit to him. Applicant is seventy years old and has been on death row for more than forty of those years. It seems at least plausible that significant changes to his environment and surroundings may cause further deterioration of his mental health status. While none of these scenarios are certainties, these possibilities need to be explored and evaluated by experts who can advise Riles or anyone who represents him to determine what Riles may want and what would be in his best interest. Appointment of a guardian ad litem, attorney ad litem, or both would serve this purpose.

To be clear, I wholeheartedly believe that incompetent inmates should have the right to zealous legal representation for their post-conviction proceedings. I further believe that

---

[5] Because the date of Applicant's offense is prior to September 1, 1991, he falls under the former capital sentencing scheme that provides the jury with the options of life with the possibility of parole, or a sentence of death. *See* TEX. CODE CRIM. PROC. art. 37.0711(g). This is in contrast to the current scheme that provides the options of life without the possibility of parole or death. *Id.* art. 37.071(g).

Applicant is legally entitled to relief for his claim. But, I write to express concern for those who may, because of their incompetence and lack of an appointed guardian ad litem, have attorneys who act with a sense of legal justice but who are not acting in their client's best interest or in accordance with their wishes. This is an area where the Legislature could consider stepping in to ensure that prison inmates adjudged incompetent are appointed someone who will represent his or her best interests and not just legal interests.[6]

In this case, we do not have affirmative proof that Riles (or anyone else with legal authority) consented to or even had the ability to consent to habeas counsel's representation. On that basis alone, I would not grant relief at this juncture but would instead remand the case to the trial court for further proceedings. Specifically, the trial court should address the question of whether Applicant had capacity to and, in fact, did consent to this litigation. If he did not, perhaps the trial court would consider referring the matter to a probate court to determine whether a guardian ad litem, attorney ad litem, or both should be appointed to ensure that this litigation serves Applicant's best interests. Therefore, I respectfully dissent.

---

[6] The Texas Estates Code provides a procedure for a probate court, after a hearing or on its own initiative, to appoint a guardian ad litem or investigator to determine if a person is incapacitated and if appointment of a guardian is necessary. TEX. EST. CODE §§ 1101.051, 1102.001. Similarly, the Family Code provides for appointment of a guardian ad litem for juveniles appearing before the court without a parent. TEX. FAM. CODE § 51.11(a) ("If a child appears before the juvenile court without a parent or guardian, the court shall appoint a guardian ad litem to protect the interests of the child."). These types of provisions applicable to the civil context may be particularly appropriate for habeas litigants, given that an estimated 15-24% of TDCJ inmates have been diagnosed with at least one serious mental illness. *Texas Department of Criminal Justice and Local Criminal Justice Agencies*, Hoff Foundation for Mental Health, https://hogg.utexas.edu/project/texas-department-of-criminal-justice-and-local-criminal-justice-agencies (October 28, 2015).

Filed: April 14, 2021

Publish