

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. WR-77,940-03

### EX PARTE TOMAS RAUL GALLO, Applicant

### ON APPLICATION FOR WRIT OF HABEAS CORPUS
### IN CAUSE NO. 940093-C
### IN THE 182ND CRIMINAL DISTRICT COURT
### HARRIS COUNTY

*Per curiam.* YEARY, J., filed a dissenting opinion in which KELLER, P.J., joined. KEEL and SLAUGHTER, JJ., dissented.

## O P I N I O N

This is a postconviction application for a writ of habeas corpus filed under Texas Code of Criminal Procedure Article 11.071, Section 5.

In February 2004, a Harris County jury found Tomas Gallo, Applicant in this case, guilty of capital murder. Based on the jury's answers to the special issues set forth in Article 37.071 and a separate special issue asking whether "the Defendant is a person

with mental retardation,"[1] the trial court sentenced Applicant to death. This Court affirmed Applicant's conviction and sentence on direct appeal. *Gallo v. State*, 239 S.W.3d 757 (Tex. Crim. App. 2007).

Applicant filed his initial 11.071 application in March 2007. Ultimately, the habeas court entered findings of fact and conclusions of law recommending that this Court deny relief. Based on the habeas court's findings and conclusions and our own review, we denied relief. *Ex parte Gallo*, No. WR-77,940-01 (Tex. Crim. App. Jan. 9, 2013) (not designated for publication).

In April 2013, the lawyer appointed to represent Applicant in his initial 11.071 proceedings attempted to file a subsequent 11.071 application on Applicant's behalf. But he did so "without the applicant's permission and against the applicant's will." *Ex parte Gallo*, 448 S.W.3d 1, 2 (Tex. Crim. App. 2014). Accordingly, this Court dismissed the filing "without prejudice to the applicant to later file a subsequent writ application that will be evaluated for abuse-of-the-writ purposes, under Section 5 of Article 11.071, as if it were the applicant's *first* subsequent writ application." *Id.* at 6.

Applicant filed the instant 11.071 application in the convicting court in November 2016. He raised eight claims, including a claim that he is intellectually disabled and therefore ineligible for execution, *see Atkins v. Virginia*, 536 U.S. 304 (2002), and a claim that his death sentence violates due process because it was based on false and

---

[1] The medical and legal communities now refer to "mental retardation" as "intellectual disability." *See, e.g.*, *Hall v. Florida*, 572 U.S. 701, 704–05 (2014).

misleading testimony, *see Ex parte Chabot*, 300 S.W.3d 768 (Tex. Crim. App. 2009). After reviewing the application, we concluded that Applicant's *Atkins* and *Chabot* claims (claims one and three, respectively) satisfied Article 11.071, Section 5. *Ex parte Gallo*, No. WR-77,940-03, at 3 (Tex. Crim. App. Feb. 8, 2017) (not designated for publication). We therefore remanded those claims to the habeas court "for resolution." *Id.*

In April 2023, the parties jointly submitted "Agreed Proposed Findings of Fact and Conclusions of Law" to the habeas court. In essence, the parties agreed that Applicant had met his burden to prove by a preponderance of the evidence that he is intellectually disabled (claim one) and that his death sentence was based on false testimony (claim three). The habeas court signed the parties' agreed proposed findings on April 5, 2023. It therefore recommends that we grant relief on claims one and three.

Having reviewed the record, we agree with the parties and the habeas court that Applicant has met his burden to show by a preponderance of the evidence that he meets the current, medically accepted diagnostic criteria for intellectual disability. Therefore, relief is appropriate on claim one. That said, we must clarify some of the habeas court's findings.

Finding 14 says, "The AAIDD-12 raises the age of onset from before age eighteen to before age twenty-two." Finding 50 says, "Onset during the developmental period refers to the recognition that intellectual and adaptive deficits are present during childhood or adolescence, i.e., prior to age twenty-two." The record shows, and we find, that Applicant's intellectual and adaptive deficits emerged before he turned eighteen.

There is therefore no need for us to decide in this case whether the developmental period extends all the way to age twenty-two.

With those clarifications, and based on our own independent review of the record, *Atkins* relief is granted. *See Atkins*, 536 U.S. at 321. Applicant's death sentence is reformed to a sentence of life imprisonment.[2] Based on this resolution, Applicant's *Chabot* claim (claim three) is moot. Any remaining claims are dismissed as an abuse of the writ under Article 11.071, Section 5.

Delivered: April 17, 2024
Do Not Publish

---

[2] At the time of Applicant's offense, in December 2001, the only punishment alternatives for capital murder were (1) death and (2) life imprisonment with the possibility of parole. Life imprisonment *without* the possibility of parole, as a possible sentence for capital murder, did not exist until September 1, 2005, and it did not apply to offenses alleged to have been committed before that date. Acts 2005, 79th Leg., ch. 787, §§ 1, 17–18, eff. Sept. 1, 2005.